STATE of Wisconsin, Plaintiff-Respondent,

v.

Barbaro ESCALONA-NARANJO, Defendant-Appellant.†

Supreme Court

*No. 92–0846. Oral argument February 2, 1994.—Decided June 22, 1994.*

(Also reported in 517 N.W.2d 157.)

†Motion for reconsideration denied September 21, 1994.

168

For the defendant-appellant there was a brief by *Gerardo H. Gonzalez* and *Gonzalez & Saggio,* Milwaukee and oral argument by *John A. Birdsall.*

For the plaintiff-respondent the cause was argued by *Thomas J. Balistreri,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

JANINE P. GESKE, J.   This is an appeal from an order of the Dane County Circuit Court, Robert R. Pekowsky, Circuit Judge, in a proceeding under sec. 974.06, Stats.,[1] to vacate a judgment of conviction or, in

---

[1] Section 974.06, Stats., reads as follows:

**974.06  Postconviction procedure. (1)**  After the time for appeal or postconviction remedy provided in s. 974.02 has expired, a prisoner in custody under sentence of a court or a person convicted and placed with a volunteers in probation program under s. 973.11 claiming the right to be released upon the ground that the sentence was imposed in violation of the U.S. constitution or the constitution or laws of this state, that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

(2)  A motion for such relief is part of the original criminal action, is not a separate proceeding and may be made at any time. The supreme court may prescribe the form of the motion.

(3)  Unless the motion and the files and records of the action conclusively show that the person is entitled to no relief, the court shall:

(a)  Cause a copy of the notice to be served upon the district attorney who shall file a written response within the time prescribed by the court.

(b)  If it appears that counsel is necessary and if the defendant claims or appears to be indigent, refer the person to the state public defender for an indigency determination and appointment of counsel under ch. 977.

(c)  Grant a prompt hearing.

(d)  Determine the issues and make findings of fact and conclusions of law. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or is otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the person as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the person or resentence him or her or grant a new trial or correct the sentence as may appear appropriate.

(4)  All grounds for relief available to a person under this section must be raised in his or her original, supplemental or

170

the alternative, order a new trial for defendant Barbaro Escalona-Naranjo (Escalona-Naranjo). Escalona-Naranjo argued that his conviction resulted from a denial of his state and federal right to effective assistance of counsel under art. I, secs. 7 and 8 of the Wisconsin Constitution[2] and the sixth and fourteenth

amended motion. Any ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the person has taken to secure relief may not be the basis for a subsequent motion, unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original, supplemental or amended motion.

(5) A court may entertain and determine such motion without requiring the production of the prisoner at the hearing. The motion may be heard under s. 807.13.

(6) Proceedings under this section shall be considered civil in nature, and the burden of proof shall be upon the person.

(7) An appeal may be taken from the order entered on the motion as from a final judgment.

(8) A petition for a writ of habeas corpus or an action seeking that remedy in behalf of a person who is authorized to apply for relief by motion under this section shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced the person, or that the court has denied the person relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his or her detention.

[2] Article I, secs. 7 and 8 of the Wisconsin Constitution provide in relevant part as follows:

**Rights of accused.** Section 7. In all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; to meet the witnesses face to face; to have compulsory process to compel the attendance of witnesses in his behalf; and in prosecutions by indictment, or information, to a speedy public trial by an impartial jury of the county or district wherein the offense shall have been committed; which county or district shall have been previously ascertained by law.

amendments to the United States Constitution.[3] By order dated March 9, 1992, the court dismissed Escalona-Naranjo's amended sec. 974.06 motion. The court concluded that each of the issues raised in Escalona-Naranjo's motion had been raised in initial postconviction motions to the circuit court, and on appeal. As such, a motion under sec. 974.06 could not be used to review issues which were or could have been litigated on direct appeal.

The court of appeals certified Escalona-Naranjo's appeal from the circuit court decision to this court, pursuant to sec. (Rule) 809.61, Stats.

**Prosecutions; double jeopardy; self-incrimination; bail; habeas corpus.** Section 8. . . . **(1)** No person may be held to answer for a criminal offense without due process of law, and no person for the same offense may be put twice in jeopardy of punishment, nor may be compelled in any criminal case to be a witness against himself or herself.

. . .

[3] The sixth amendment to the United States Constitution reads:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

The fourteenth amendment, sec. 1, provides:

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

172

The issue in this case is whether Escalona-Naranjo is prohibited from raising his claim of ineffective assistance of trial counsel in a postconviction motion under sec. 974.06, Stats., if such a claim could have been raised in a previously filed sec. 974.02 motion and/or on direct appeal. We conclude that Escalona-Naranjo could have raised the ineffective assistance of trial counsel claim in postconviction motions under sec. 974.02, Stats.[4] Therefore, we hold that Escalona-Naranjo is precluded from raising that issue in a sec. 974.06 motion. We now affirm the order of the circuit court dismissing Escalona-Naranjo's sec. 974.06 motion.

In December, 1984, a criminal complaint was filed, charging Escalona-Naranjo with two counts of possession of controlled substances with intent to deliver, in violation of secs. 161.14(4)(n), 161.14(4)(t), and 161.41(1m)(b), Stats. [5] Escalona-Naranjo was convicted of both counts following a jury trial in February,

---

[4] Section 974.02, Stats., provides in relevant part:

**974.02 Appeals and postconviction relief in criminal cases.**
**(1)** A motion for postconviction relief other than under s. 974.06 by the defendant in a criminal case shall be made in the time and manner provided in ss. 809.30 and 809.40. An appeal by the defendant in a criminal case from a judgment of conviction or from an order denying a postconviction motion or from both shall be taken in the time and manner provided in ss. 808.04(3), 809.30 and 809.40. . . .
**(2)** An appellant is not required to file a postconviction motion in the trial court prior to an appeal if the grounds are sufficiency of the evidence or issues previously raised.

[5] Section 161.14(4)(n), Stats., lists phencyclidine, commonly known as "PCP," as an hallucinogenic drug and controlled substance.

Section 161.14(4)(t), Stats., lists tetrahydrocannabinols, commonly known as "TCH," as an hallucinogenic controlled

1986. Though the initial date for sentencing was to occur in May, 1986, trial counsel filed a motion to vacate the conviction and requested an inquiry as to Escalona-Naranjo's mental condition. A competency hearing was held in August of that year, wherein Escalona-Naranjo was determined to be competent for sentencing.

Following Escalona-Naranjo's sentencing in September, 1986, defense counsel filed a notice of intent to seek postconviction relief. *See* sec. 809.30(2)(b), Stats. Pursuant to sec. 974.02, Stats., postconviction motions for a new trial, competency redetermination, and resentencing were filed in December, 1986.

In July, 1987, the circuit court issued a memorandum decision denying Escalona-Naranjo's motion to vacate the judgment and order a new trial. The court stated that the "defendant has failed to show the existence of error sufficient to justify an order vacating the

---

substance. It is contained in marijuana, obtained from marijuana or chemically synthesized.

Section 161.41(1m)(b), Stats., reads as follows:

**161.41   Prohibited acts A—penalties. . . .**

. . .

**(1m)**   Except as authorized by this chapter, it is unlawful for any person to possess, with intent to manufacture or deliver, a controlled substance. Intent under this subsection may be demonstrated by, without limitation because of enumeration, evidence of the quantity and monetary value of the substances possessed, the possession of manufacturing implements or paraphernalia, and the activities or statements of the person in possession of the controlled substance prior to and after the alleged violation. Any person who violates this subsection with respect to:

. . .

**(b)**   Except as provided in pars. (c), (cm) and (e) to (h), any other controlled substance classified in schedule I, II or III, may be fined not more than $15,000 or imprisoned for not more than 5 years or both[.]

judgment and granting a new trial. Nor has defendant shown that the cumulative impact of the challenged evidentiary decisions was sufficiently prejudicial to require grant of defendant's motion."

After the court of appeals affirmed the judgment of the circuit court, Escalona-Naranjo filed a sec. 974.06, Stats., motion in July, 1990. An amended motion was filed in February, 1991. Escalona-Naranjo claimed relief because his conviction resulted from a denial of his right to effective assistance of trial counsel under art. I, secs. 7 and 8 of the Wisconsin Constitution and the sixth and fourteenth amendments of the United States Constitution. Specifically, Escalona-Naranjo argued that certain evidence and testimony admitted at trial should have been objected to by trial counsel and that the failure to object resulted in a waiver of the right to appeal on these issues.

The state, in its motion to summarily dismiss Escalona-Naranjo's sec. 974.06 motion, argued that all of the alleged errors claimed had been previously raised in the 1986 postconviction motion and on appeal. The state contended that merely rephrasing the issues submitted on appeal would not constitute the basis for a sec. 974.06 motion.

The circuit court adopted the reasoning of the state and dismissed the sec. 974.06 motion. Escalona-Naranjo sought further review by the court of appeals. Certifying the case to this court, the court of appeals stated that even though Escalona-Naranjo waived certain evidentiary issues because he did not object at trial, the sec. 974.06 motion may have raised new issues not decided on direct appeal.

This case involves the construction of sec. 974.06, Stats. A question of statutory construction is a question

of law which this court decides independently and without deference to the reasoning of the lower courts. *Pulsfus Farms v. Town of Leeds,* 149 Wis. 2d 797, 803–04, 440 N.W.2d 329 (1989) (citing *Sacotte v. Ideal-Werk Krug & Priester,* 121 Wis. 2d 401, 405, 359 N.W.2d 393 (1984), and *Ball v. District No. 4, Area Board,* 117 Wis. 2d 529, 537, 345 N.W.2d 389 (1984)). *See also City of Muskego v. Godec,* 167 Wis. 2d 536, 545, 482 N.W.2d 79 (1992) (with the construction of a statute, an appellate court is not bound by a trial court's conclusions of law and decides the matter *de novo*).

## PURPOSE OF SECTION 974.06, STATS.

With the exception of subsection (4), sec. 974.06[6] is a direct adaptation of 28 U.S.C. sec. 2255.[7] The federal statute attempted to provide "an expeditious remedy for correcting erroneous sentences without resorting to habeas corpus." Angela B. Bartell, Comment, *Wisconsin Post Conviction Remedies—Habeas Corpus: Past, Present and Future,* 1970 Wis. L. Rev. 1145, 1152 [hereinafter *Wisconsin Post Conviction Remedies*]. *See also* U.S. Code Congr. Serv. 1248 (1949) (Act of May 24, 1949). In fact, as applied in Wisconsin, the postconviction motion procedure under sec. 974.06 was "designed to replace habeas corpus as the primary method in which a defendant can attack his conviction after the time for appeal has expired." Howard B. Eisenberg, *Post-Conviction Remedies in the 1970's,* 56 Marq. L. Rev. 69, 79 (1972).

In 1972, this court stated that

---

[6] Section 974.06 was enacted as ch. 255, sec. 63, Wis. Laws of 1969, effective July 1, 1970.

[7] Enacted June 25, 1948, ch. 646, 62 Stat. 967; amended May 24, 1949, ch. 139, sec. 114, 63 Stat. 105.

[t]he postconviction motion under sec. 974.06, Stats., is not a substitute for a motion for a new trial. A sec. 974.06 motion can be made only after the defendant has exhausted his direct remedies which consist of a motion for a new trial and appeal. A sec. 974.06 motion is limited in scope to matters of jurisdiction or of constitutional dimensions. The motion must not be used to raise issues disposed of by a previous appeal.

*Peterson v. State,* 54 Wis. 2d 370, 381, 195 N.W.2d 837 (1972) (footnote omitted). *See also Nichols v. State,* 73 Wis. 2d 90, 241 N.W.2d 877 (1976); *Sass v. State,* 63 Wis. 2d 92, 216 N.W.2d 22 (1974).

By contrast, the language of subsection (4) of sec. 974.06 was adapted from the Uniform Post-Conviction Procedure Act. *See* 11 U.L.A. 477 (1974). First approved in 1955 by the National Conference of Commissioners on Uniform State Laws and the American Bar Association, it was revised by the same bodies in 1966. The primary purpose of the act was to compel a prisoner to raise all grounds regarding postconviction relief in his or her original, supplemental or amended motion, thereby cutting off successive frivolous motions.[8] *See* sec. 8 of the uniform act [Waiver of

[8] In the Commissioners' Prefatory Note, the rationale for the proposed uniform act was discussed. Of great concern was the increased federal-state conflict resulting from the use of a federal habeas corpus writ by state prisoners. Abuses which had arisen in connection with federal habeas corpus would, according to the commissioners, be eliminated by means of constructive action at the state level. Thus, the Uniform Post-Conviction Procedure Act was designed in part to (1) provide a single, unitary, postconviction remedy to be used in place of other state remedies; (2) provide a remedy for all grounds for attacking the validity of a conviction or sentence in a criminal case; and (3) require the applicant to present all claims for

177

Claims]; *see also Wisconsin Post Conviction Remedies,* 1970 Wis. L. Rev. at 1153. In 1980, the new Post-Conviction Procedure Act was approved and superseded the 1966 version. The substance of sec. 8 is now embodied in sec. 12 [Affirmative Defenses-Res Judicata-Misuse of Process].

Though Wisconsin did not formally adopt the Uniform Post-Conviction Procedure Act, the purpose underlying the original sec. 8 was incorporated into sec. 974.06(4). Contrary to the assertion of the dissent in this case, the purpose of sec. 974.06(4) is clear: to require criminal defendants to consolidate all their postconviction claims into *one* motion or appeal.[9]

### *ESCALONA-NARANJO'S SECTION 974.06 MOTION WAS PROPERLY DISMISSED*

Escalona-Naranjo argues that neither the circuit court nor the court of appeals directly addressed any claim that trial counsel's failure to object to the admission of certain evidence or testimony at trial resulted in ineffective assistance of counsel. As a result, he contends that the claim of ineffective assistance of trial counsel in the sec. 974.06 motion should not be pre-

---

attack on the conviction or sentence at the initial postconviction proceeding, unless sufficient reason was given as to why a ground for relief was not raised or adequately asserted at that proceeding. *See* 11 U.L.A. at 479–82.

[9] At the time of the 1966 revision of the Uniform Post-Conviction Procedure Act, the Commissioners' Prefatory Note articulated a similar intent:

> [The act] requires an applicant to present all of his claims for attack on his conviction or sentence in his initial post-conviction proceeding. . . .

11 U.L.A. at 481.

cluded because it is being raised now for the first time and is a distinct issue from those previously considered. In his sec. 974.02 motion for postconviction relief, requesting a new trial, Escalona-Naranjo alleged that he was deprived of his due process right to a fair trial, in part, for the following reasons:

(1) The court improperly admitted testimony regarding a search warrant, which evidence was overly prejudicial to the defendant and consisted of impermissible hearsay;

(2) The court improperly permitted substantial inadmissible hearsay to be used against the defendant;

(3) The court permitted the introduction of substantial evidence of other crimes which were not relevant and which were prejudicial to the defendant;

(4) The court improperly admitted the testimony of police officers regarding matters beyond their competence; and

(5) The court improperly permitted the introduction of extrinsic evidence of the credibility of a confidential informant, in violation of sec. 906.08(2), Stats.

However, in the circuit court's memorandum decision and order, these challenges were directly addressed. In each case, the court noted that either (a) the defendant failed to show that evidence was improperly admitted or (b) no objection was made at trial to the introduction of certain testimony or evidence. The court concluded that the failure to raise a timely objection operated as a waiver of any future challenge to the evidence.

Additionally, it must be noted that two companion postconviction motions were filed on the same day as the motion for a new trial. Those motions called for a competency redetermination or, in the alternative,

179

resentencing. In each of those motions, Escalona-Naranjo specifically alleged that he was denied effective assistance of counsel at his competency hearing and his sentencing but never alleged ineffective assistance of his trial attorney.[10]

Escalona-Naranjo argues that any failure to raise the issue of ineffective assistance of counsel in his sec. 974.02 motion for a new trial or on direct appeal does not constitute a waiver, because the issue is one of constitutional dimension. Escalona-Naranjo looks to this court's decision in *Bergenthal v. State,* 72 Wis. 2d 740, 242 N.W.2d 199 (1976), as controlling.

During his trial for first-degree murder, Bergenthal requested an *in camera* inspection of materials possessed by the state, which he claimed were exculpatory. Upon review, the circuit court concluded the materials were not exculpatory and had them sealed in a brown envelope for subsequent appeal purposes. *Id.* at 746. During postverdict motions, Bergenthal raised 100 claims of error and, for a second time, challenged the failure of the court to disclose the contents of the envelope. On appeal, 99 claims of error were raised, but not the circuit court's failure to disclose the contents of the envelope. *Id.* at 745–46. Though the court's ruling on the exculpatory nature of the materials in the envelope was not challenged on direct appeal, the materials themselves were not transferred to this court for review when direct appeal was taken. *Id.* at 746.

After this court affirmed Bergenthal's 'conviction, he challenged the denial of access to the allegedly exculpatory materials in a sec. 974.06 motion. The cir-

---

[10] The parties subsequently stipulated to the granting of postconviction relief in the form of a *de novo* sentencing hearing. Thereafter, Escalona-Naranjo withdrew his postconviction motion with regard to a competency redetermination.

cuit court denied the motion, stating that the issue had been disposed of on direct appeal and that, therefore, "the motion could not be used as a vehicle for a second appeal on grounds already reviewed." *Id.* at 745. This court disagreed and stated that

> [e]ven though the issue might properly have been raised on appeal, it presents an issue of significant constitutional proportions and, therefore, must be considered in this motion for postconviction relief.

*Id.* at 748.

We now overrule the holding in *Bergenthal* which stated that although a defendant fails to raise a constitutional issue on appeal, the issue still must be considered when raised in a subsequent sec. 974.06 motion. The plain language of subsection (4) clearly provides when a sec. 974.06 motion is appropriate. First, all grounds for relief under sec. 974.06 must be raised in a petitioner's original, supplemental, or amended motion. Contrary to statements by the dissent, there is no legislative history which restricts "original, supplemental or amended motion" to a motion brought solely under sec. 974.06. Further, such a conclusion could not be reached even if we were to look to the drafting language of section 8 of the Uniform Post-Conviction Procedure Act.

Second, if the defendant's grounds for relief have been finally adjudicated, waived or not raised in a prior postconviction motion, they may not become the basis for a sec. 974.06 motion. The language of subsection (4) does not exempt a constitutional issue from this limitation, *unless* the court ascertains that a "sufficient reason" exists for either the failure to allege or to ade-

quately raise the issue in the original, supplemental or amended motion.[11]

[11] In *State v. Klimas,* 94 Wis. 2d 288, 288 N.W.2d 157 (Ct. App. 1979), the defendant filed a sec. 974.06 motion and appeal challenging the constitutionality of his conviction for first-degree murder. Klimas claimed that the circuit court's refusal to allow psychiatric testimony regarding his mental state at the time of the murder and the refusal to submit a manslaughter instruction to the jury deprived him of due process of law. *Id.* at 291. The court of appeals held that

[a] defendant's failure to raise the issue on direct appeal was not a 'knowing, voluntary and intelligent waiver' within the meaning of the statute, and that he had a 'sufficient reason' for failing to assert them at that time. Moreover, the issues presented on this appeal are issues of significant constitutional magnitude.

*Id.* at 299 (footnote omitted).

We overrule that part of *Klimas* which relied on the *Bergenthal* conclusion that all constitutional issues must be considered in postconviction relief proceedings. However, at the time of Klimas' direct appeal, this court had not yet decided the case of *Schimmel v. State,* 84 Wis. 2d 287, 267 N.W.2d 271 (1978). *Schimmel* followed the case of *Hughes v. Matthews,* 576 F.2d 1250 (7th Cir. 1978), which held that the exclusion of psychiatric testimony regarding a defendant's mental capacity to form the intent to kill, coupled with a jury instruction stating the defendant is presumed to have intended the natural and probable consequences of his acts, unconstitutionally relieves the state of its burden of proving intent beyond a reasonable doubt. The exclusion of such testimony deprived the defendant of his sixth and fourteenth amendment rights to present a defense. Under *Hughes* and *Schimmel,* the psychiatric evidence in *Klimas* should have been admitted. *Klimas,* 94 Wis. 2d at 296–97.

Since the effect of subsequent law was not foreseen at the time of the appeal, a "sufficient reason" existed as to why certain issues were not raised in the earlier motion.

Even if the *Bergenthal* court was aware, as the dissent asserts,[12] that the origin of subsection (4) was distinct from the rest of sec. 974.06, it failed to properly address the fact that it was designed as a means to compel a prisoner to consolidate all grounds for relief, including constitutional grounds, in his or her original, supplemental or amended motion.[13]

Additionally, the *Bergenthal* decision appears to rely on *Loop v. State,* 65 Wis. 2d 499, 502, 222 N.W.2d 694 (1974), wherein this court stated: "Issues of constitutional dimension can be raised on direct appeal and can also be raised on 974.06 motions." We note, how-

---

[12] The dissent would have us assume that the presence of Justice Connor Hansen at a November, 1969, meeting of the Judicial Council Criminal Procedure Code Revision Committee subsequently validated the court's reasoning in *Bergenthal.* Dissenting op. at 188–189. Though Justice Hansen stated at the meeting that this court favored "some kind of omnibus postconviction remedy," the legislative history from which this decision is drawn is devoid of any further comment by him regarding an understanding of the scope or limitations imposed by subsection (4).

[13] Subsection (4) was incorporated as a part of sec. 974.06 by ch. 255, sec. 63, Wis. Laws of 1969, effective July 1, 1970. A comparable limiting provision was not incorporated into 28 U.S.C. sec. 2255 until September, 1976, effective February, 1977. Rule 9(b) of the rules governing sec. 2255 proceedings for the United States district courts states:

> *Successive motions.* A second or successive motion may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the movant to assert those grounds in a prior motion constituted an abuse of the procedure governed by these rules.

(As amended Pub. L. 94–426, sec. 2(9), (10), Sept. 28, 1976, 90 Stats. 1335).

ever, that although the defendant in *Loop* filed a sec. 974.06 motion requesting a new trial, he had not previously filed a sec. 974.02 motion or pursued a direct appeal. As a result, no ground for relief had been either raised or finally adjudicated in an earlier postconviction motion or appeal. In *Loop,* this court simply held that "where a direct appeal is not taken, a defendant is [not] foreclosed from raising an alleged error of constitutional dimension in a sec. 974.06 motion . . .." *Id.* at 502.

In contrast, Bergenthal did appeal, raising 99 claims of error but not challenging the circuit court's ruling on the allegedly exculpatory materials in the sealed envelope. By failing to properly apply sec. 974.06(4), the *Bergenthal* court allowed the defendant to raise that one remaining issue in a sec. 974.06 motion.

As applied in the instant case, subsection (4) clearly does not preclude Escalona-Naranjo from raising, even at this time, an issue of constitutional dimension which for *sufficient reason* was not asserted or was inadequately raised in his original, supplemental or amended postconviction motions. However, Escalona-Naranjo raised the issue of ineffective assistance of counsel in two of his sec. 974.02 motions. At the same time, he already knew that his trial attorney had failed to object to what he believed to be inadmissible evidence. He chose not to make that allegation in those motions and has not alleged any *sufficient reason* why a court should now entertain that same claim in a sec. 974.06 motion.

The dissent criticizes this decision because "it treats direct appeals and motions under sec. 974.06 identically in interpreting sec. 974.06(4). They are not to be treated the same for purposes of sec. 974.06(4)."

184

Dissenting op. at 190. However, the dissent cites no authority for that proposition. The plain language of sec. 974.06(4) states that "[a]ny ground . . . not so raised . . . *in the proceeding that resulted in the conviction or sentence or in any other proceeding the person has taken to secure relief may not be the basis for a subsequent motion . . . .*" (Emphasis added.) Again, nowhere in the statute is it stated that a sec. 974.06 motion should be treated differently from a direct appeal or a sec. 974.02 motion.

We need finality in our litigation. Section 974.06(4) compels a prisoner to raise all grounds regarding postconviction relief in his or her original, supplemental or amended motion. Successive motions and appeals, which all could have been brought at the same time, run counter to the design and purpose of the legislation.

Contrary to the assertion of the dissent, we are not foregoing fairness for finality nor do we abdicate our responsibility to protect federal constitutional rights. We simply apply the plain language of subsection (4) which requires a *sufficient reason* to raise a constitutional issue in a sec. 974.06 motion that *could have been raised* on direct appeal or in a sec. 974.02 motion. The dissent fails to explain why it is now unfair to tell Escalona-Naranjo, or other criminal defendants and their attorneys, that constitutional claims which could have been raised on direct appeal or in a sec. 974.02 motion cannot later be the basis for a sec. 974.06 motion.

Section 974.06(4) was not designed so that a defendant, upon conviction, could raise some constitutional issues on appeal and strategically wait to raise other constitutional issues a few years later. Rather, the defendant should raise the constitutional issues of

185

which he or she is aware as part of the original postconviction proceedings. At that point, everyone's memory is still fresh, the witnesses and records are usually still available, and any remedy the defendant is entitled to can be expeditiously awarded.

█

In its motion to dismiss Escalona-Naranjo's sec. 974.06 motion, the state's written argument to the circuit court began: "When are these cases ever completed? It appears that as long as some lawyer can come up with a new theory the appeals continue." During the process of filing a series of sec. 974.02 postconviction motions in 1986, Escalona-Naranjo had available to him a complete record of the trial and postverdict proceedings. He claimed ineffective assistance of the counsel who handled the competency and sentencing hearings but chose not to raise that same issue with respect to his trial attorney. We conclude that he has not alleged a sufficient reason as to why his allegation of ineffective assistance of trial counsel could not have been raised when he filed his sec. 974.02 motion for a new trial. The circuit court properly dismissed his motion.

*By the Court.*—The order of the circuit court is affirmed.

SHIRLEY S. ABRAHAMSON, J. *(dissenting)*. For 18 years applications for post-conviction relief under sec. 974.06, Stats. 1991–92, have been filed, litigated, and decided according to the precepts of *Bergenthal v. State,* 72 Wis. 2d 740, 242 N.W.2d 199 (1976). Today the majority overrules *Bergenthal.* The majority is able to justify its abandonment of precedent only by misconstruing the statute, by making it appear that the

186

*Bergenthal* case was erroneously decided. On the contrary, *Bergenthal* was then and is now sound law.

The majority overrules *Bergenthal* for three reasons: 1) the *Bergenthal* court's alleged failure to interpret sec. 974.06(4) correctly and to appreciate the origins of sec. 974.06(4); 2) the *Bergenthal* court's supposed misreading of *Loop v. State,* 65 Wis. 2d 499, 222 N.W.2d 694 (1974); and 3) *Bergenthal's* alleged inconsistency with the goal of "finality." None of these reasons for overturning an 18-year-old precedent withstands scrutiny. The majority fails to weigh the value of fairness against the goal of finality and abdicates its responsibility to protect federal constitutional rights.

## I.

The majority concludes that the *Bergenthal* court misinterpreted sec. 974.06(4) by allowing constitutional issues to be raised in a sec. 974.06 motion which could have been—but were not—raised on direct review. The majority's mistaken conclusion about *Bergenthal* and sec. 974.06(4) is premised on its misinterpretation of sec. 8 of the Uniform Post-Conviction Procedure Act upon which sec. 974.06(4) is based. *See* majority opinion n.8.

The *Bergenthal* court knew that the origin of sec. 974.06(4) was the Uniform Post-Conviction Procedure Act. The *Bergenthal* court cited the Committee Comment to sec. 974.06. *See Bergenthal,* 72 Wis. 2d at 748, n.1. The "Committee" referred to in *Bergenthal* is the 1967 Judicial Council Criminal Procedure Code Revision Committee (sometimes referred to as the Criminal Rules Committee) with which the court was very familiar. Indeed Justice Connor Hansen, the author of the *Bergenthal* opinion, attended at least one of the Committee's meetings "to discuss with the members the

Supreme Court's feeling on the Uniform Post-Conviction Act."[1] Providing post-conviction remedies was a major issue facing state courts in the late 1960s, and the court played a role in the Judicial Council draft.

Furthermore the Committee Comments, which the *Bergenthal* court obviously examined, clearly explain the source of sec. 974.06(4): "Sub. (4) is taken from the Uniform Post-Conviction Procedure Act and is designed to compel a prisoner to raise all questions available to him in one motion."[2] Thus Justice Connor Hansen's reference in *Bergenthal* to the Committee Comments demonstrates that the court was aware of the origins of sec. 974.06.

The drafters of the Uniform Act (and sec. 974.06(4)) assumed that prisoners collaterally attacking their convictions had already completed the direct appeal process (or brought a sec. 974.02 motion) or that the time for exercising that remedy had passed.[3] The Prefatory Note to the Uniform Act explains "What the Proposed Act Does" as follows: "It provides a single,

---

[1] Minutes of the Judicial Council Criminal Procedure Code Revision Committee, Nov. 17–18, 1969, in the bill drafting records to Laws of 1969, ch. 255.

[2] 1970 Wis. Annot. sec. 974.06; Laws of 1969, ch. 255, sec. 63 (sec. 974.06); sec. 974.06, Wis. West's Stats. Ann., Comments-L. 1969, c. 255, at p. 258 (1985).

[3] This court has said: "A sec. 974.06 motion can be made only after the defendant has exhausted his direct remedies which consist of a motion for new trial and appeal . . .. The motion must not be used to raise issues disposed of by a previous appeal." *Peterson v. State,* 54 Wis. 2d 370, 381, 195 N.W.2d 837 (1972).

Section 974.06(1) was amended in 1977 to specify that a sec. 974.06 motion can be brought only "[a]fter the time for appeal or post-conviction remedy provided in Section 974.02 has expired."

unitary, postconviction remedy to be used in place of all other state remedies (except direct review)." 11 U.L.A. 481 (Master Edition 1974). Sec. 1(b) of the Uniform Act expressly states that the post-conviction remedy is "not a substitute for nor does it affect any remedy incident to the proceedings in the trial court, or of direct review of the sentence or conviction . . .." 11 U.L.A. 486 (Master Edition 1974).

Rather, the drafters of the Uniform Act focused on devising a fair method of barring prisoners from bringing multiple motions for post-conviction relief. Following a trial and appeal, a prisoner ordinarily would be entitled to one motion for post-conviction relief. Section 8 of the Uniform Act, codified in Wisconsin as sec. 974.06(4), attempted to limit prisoners to a single post-conviction motion, unless there was "sufficient reason" that a ground for relief was not asserted in the initial motion.[4]

The majority opinion runs into trouble, I believe, because it treats direct appeals and motions under sec. 974.06 identically in interpreting sec. 974.06(4). They are not to be treated the same for purposes of sec. 974.06(4).

A sec. 974.06 motion and an appeal are two separate and distinct proceedings. State collateral review, provided for in Wisconsin under sec. 974.06, is the conceptual equivalent of federal habeas corpus—an

---

[4]*See* Proceedings of the Committee of the Whole, Second Revised Uniform Post-Conviction Procedure Act, August 3, 1966, pp. 1–7, 33–43. As the presenter of the Act explained, section 8 has to do with finality. Prisoners seeking post-conviction relief "should have a full-blown inquiry once and for all, and . . . after that, except for an escape clause, which we have put into the Act, there shall not be and must not be repeated and frivolous excessive effort to seek review of a conviction."

opportunity for a prisoner to challenge imprisonment, generally on constitutional grounds. States adopted collateral review procedures to avoid "[t]he specter of federal court orders freeing state convicts in the absence of adequate state remedies," as the United States Supreme Court expanded the scope of federal habeas corpus.[5] Such review can be an important supplement to a direct appeal.

With this distinction in mind, it is clear that sec. 974.06(4) and sec. 8 are not aimed at preventing a prisoner from first bringing a direct appeal (or a 974.02 motion) and then bringing a sec. 974.06 motion. Rather, sec. 974.06(4), and sec. 8 of the Uniform Act, are designed to prevent prisoners from bringing successive collateral attacks, that is successive sec. 974.06 motions challenging their convictions.

The language of sec. 974.06(4), which is substantially the same as sec. 8 of the Uniform Act, makes absolutely clear that it does not bar a sec. 974.06 motion from raising constitutional issues that could have been but were not raised on direct review. The statute reads as follows:

> "All grounds for relief available to a person under this section must be raised in his or her original, supplemental or amended motion. Any ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the person has taken to secure relief may not be the basis for a subsequent motion, unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original, supplemental or amended motion."

---

[5] Larry W. Yackle, *Post-Conviction Remedies* 2–3 (1981).

The majority's error lies in equating sec. 974.06 motions with direct reviews (including 974.02 motions) in its reading of the first sentence of sec. 974.06(4), which mandates that all grounds available for relief under sec. 974.06(4) be raised in the "original, supplemental or amended motion." The majority reads this sentence as referring to both an appeal and a sec. 974.02 motion. *See* majority opinion at 185–186. Here's the error. The "original, supplemental or amended motion" referred to in this first sentence is the motion under sec. 974.06.[6]

---

[6] The very language of sec. 974.06(4) and sec. 8 of the Uniform Act states this point clearly, and the legislative history of the Uniform Act supports my understanding of the first sentence.

A comment during the commissioners' discussion of the Uniform Act illustrates that the first sentence of sec. 8 (and of sec. 974.06) relates only to a motion under the Uniform Act (and to a sec. 974.06 motion):

"Mr. Gibson: Mr. Chairman, I'd like to call to your attention a possible connotation that might be put on the first sentence, 'All grounds for *relief* available to an *applicant under this Act* must be raised in his *original, supplemental, or amended application.*' Some of them will take the position that they can file an original application and have a hearing on that, and later file an amended application. I think it might be well to resolve that ambiguity by stating 'must be raised in his original application, which application may be supplemented or amended.'

"Mr. Jenner: We have already said that.

". . ..

"Mr. Gibson: Yes, I think you have, but I think that some of them will undoubtedly take the position—and by that I mean it can be construed—that you can file an amended application after a hearing on your original application.

"Mr. Jenner: That wouldn't be an amendment. That would be a new one.

". . ..

191

The next sentence of sec. 974.06(4) sets forth three grounds which cannot be the basis for a sec. 974.06 motion: (1) Any ground that was finally adjudicated or was not raised in a prior sec. 974.06 motion; (2) Any ground that was knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence; and (3) Any ground that was knowingly, voluntarily and intelligently waived in any other proceeding the person has taken to secure relief.[7]

Although a prisoner is thus barred under sec. 974.06 from relitigating in a sec. 974.06 motion an issue that was fully and fairly adjudicated and decided on the merits in a direct appeal,[8] nothing in the lan-

"Mr. Gibson: Your interpretation is proper, but my experience has been with these that they will take all kinds of different attacks against or in aid of different applications.

"Mr. Northan: May we take care of this by note, and suggest that we mean what we say? [Laughter]" Proceedings of the Committee of the Whole, Second Revised Uniform Post-Conviction Procedure Act, August 3, 1966, p. 35 (emphasis added).

[7] A critic of the Uniform Act objected on the grounds of finality. He approved that the Act "does prevent raising issues that a defendant has inexcusably failed to raise in a previous post-conviction proceeding or in the proceedings leading to the judgment of conviction." But he suggested that the "general thrust . . . should be to encourage—perhaps require—all then known and available defenses to be raised in the proceedings leading to conviction and in the appeal thereof." Proceedings in Committee of the Whole, Uniform Post-Conviction Procedure Act of the National Conference of Commissioners on Uniform State Laws, July 26 and 29, 1980, at 8.

[8] *State v. Walberg,* 109 Wis. 2d 96, 103, 325 N.W.2d 687 (1982); *State v. Roh,* 104 Wis. 2d 77, 96, 319 N.W.2d 631 (Ct. App. 1981); *Beamon v. State,* 93 Wis. 2d 215, 220, 286 N.W.2d 592 (1979); *Peterson. v. State,* 54 Wis. 2d 370, 195 N.W.2d 837 (1972); Howard Eisenberg, *Post-Conviction Remedies in the 1970's,* 56 Marq. L. Rev. 69, 80 (1972).

guage of sec. 974.06 (or sec. 8 of the Uniform Act), the legislative history of sec. 974.06(4) (or the Uniform Act), or our cases supports the majority's conclusion that sec. 974.06(4) bars a prisoner from raising in a sec. 974.06 motion any issue that *could* have been raised in a direct appeal.[9] Section 974.06(4) bars the prisoner from raising in a *subsequent* sec. 974.06 motion issues that could have been raised in the initial sec. 974.06 motion, unless "sufficient reason" excuses the omission.

To further support this interpretation of sec. 8 of the Uniform Act (and therefore of sec. 974.06(4)), I turn to the American Bar Association (ABA) Standards Relating to Post-Conviction Remedies. As the majority opinion explains, majority opinion at 178, the Commissioners on Uniform State Laws worked closely with the American Bar Association Standards Committee in drafting the Uniform Act. Indeed the Commissioners

---

[9] The Commissioner's Comment to sec. 8 of the Uniform Act explains that this provision was adopted to mirror the "permissiveness" toward successive claims under the federal collateral relief statute required by the Supreme Court in *Sanders v. United States,* 373 U.S. 1 (1963). 11 U.L.A. at 528–29.

The Wisconsin court of appeals has held that when no identity of issues exists on a previous appeal and a present post-conviction motion, the motion should be heard, quoting *Sanders'* holding as follows: "[s]hould doubts arise in particular cases as to whether two grounds are different or the same, they should be resolved in favor of the [petitioner]." *State v. Sharlow,* 106 Wis. 2d 440, 444, 317 N.W.2d 150 (Ct. App. 1982), *aff'd,* 110 Wis. 2d 226, 327 N.W.2d 692 (1983).

In *State v. Klimas,* 94 Wis. 2d 288, 288 N.W.2d 157 (Ct. App. 1979), *cert. denied,* 449 U.S. 1016 (1980), the court permitted a defendant to raise in sec. 974.06 post-conviction proceedings an issue which had not been raised on his earlier direct appeal.

stated that the "impetus and pole star of this [1980] revision are the current ABA standards."[10] According to the 1967 and 1980 ABA Standards, except in case of abuse of process, claims advanced in post-conviction applications should be decided on their merits, even though they might have been, but were not, fully and finally litigated in prior stages of litigation.[11]

In summary, contrary to the majority's position, the Uniform Post-Conviction Remedies Act, the origin of sec. 974.06(4), supports the court's approach in *Bergenthal*. The majority's attempt to undercut the reasoning of *Bergenthal* fails because the majority does not distinguish between motions for relief filed pursuant to sec. 974.06(4) and direct appeals. The *Bergenthal* court did draw the necessary the distinction between the two and fully comprehended the essential role played by post-conviction collateral review. The *Bergenthal* court held that "even though the issue [raised in this motion] might properly have been raised on appeal, it presents an issue of significant constitutional proportions and, therefore, must, be considered in this motion for post-conviction relief." *Bergenthal,* 72 Wis. 2d at 748.

## II.

The majority's second mistake is its misreading of *State v. Loop,* 65 Wis. 2d 499, 222 N.W.2d 694 (1974).

---

[10] Proceedings in Committee of the Whole, Uniform Post-Conviction Procedure Act of the National Conference of Commissioners on Uniform State Laws, July 26 and 29, 1980, at 1.

[11] American Bar Assn Project on Minimum Standards for Criminal Justice, Standards Relating to Post-Conviction Remedies, Standards 6.1 and 6.2 and Commentary (1967), and American Bar Assn, Standards for Criminal Justice, Standards 22–6.1, 22–6.2 (vol. 5, 2d ed. 1980).

According to the majority opinion, *Loop* states (1) that if the prisoner does not bring an appeal or a sec. 974.02 motion then he can bring a sec. 974.06 motion on constitutional issues that he could have raised but failed to raise on appeal, and (2) that if the prisoner brings an appeal or a sec. 974.02 motion, he may not bring (except for sufficient cause) a sec. 974.06 motion on constitutional issues that he failed to raise. This is not what *Loop* says. Rather, *Loop* states that "[i]ssues of constitutional dimension can be raised on direct appeal and can also be raised on 974.06 motion." *Loop,* 65 Wis. 2d at 502.

The cases and texts discussing sec. 974.06 do not distinguish *Loop* as the majority does. *See* Robert J. Martineau and Richard R. Malmgren, *Wisconsin Appellate Practice* ch. 27, sec. 2706 (1978); David L. Walther, Patricia L. Grove, Michael S. Heffernan, *Appellate Practice and Procedure in Wisconsin* sec. 19.6b (1993).

### III.

The majority's last argument supporting its decision to overrule *Bergenthal* is that "[w]e need finality in our litigation." Majority opinion at 186. Of course finality is very important. The drafters of sec. 974.06(4) and the Uniform Post-Conviction Procedure Act were attempting to ensure finality by allowing a prisoner to bring only one post-conviction motion after direct appeal. The comments of *Bergenthal*'s author, Justice Connor Hansen, to the Judicial Council Committee reflect the court's concern with ensuring that a pris-

195

oner receive "one chance" at post-conviction relief under sec. 974.06.[12]

Concerned as it was about finality of litigation, the *Bergenthal* court nevertheless recognized that the goal of finality must be balanced against the need to ensure that significant constitutional claims receive a full inquiry on review under sec. 974.06. Finality is no more important today than it was 18 years ago; invoking the need for finality is certainly no justification for overruling the decision of a court that fully appreciated the issue.

As we weigh fairness and finality, we must remember that it is almost always the lawyer, not the client, who fails to raise an issue on direct review. I am aware of the important legal fiction that clients and lawyers are ordinarily treated as one under the law, but this concept is nevertheless a fiction. Even competent lawyers make mistakes. It seems to me fundamentally unfair to visit the mistakes of a lawyer on a client who is challenging the constitutionality of his conviction on the basis of ineffective assistance of counsel.

Section 974.06(4) ensures finality by ordinarily limiting prisoners to a single post-conviction motion. Moreover, in the states that have apparently adopted the majority's approach to motions for collateral relief, the litigation has merely shifted the court's attention from the merits of the constitutional claim to arcane procedural issues.[13] Rather than create a procedural morass, I would rather see courts deal with significant constitutional issues on their merits.

[12] Minutes of the Judicial Council Criminal Procedure Code Revision Committee, Fri. Nov.17–18, 1969, in the bill drafting records of ch. 255, Laws of 1969.

[13] *See* cases cited in the annotations to secs. 8 and 12 of the Uniform Act.

Thus the majority's third reason for overruling *Bergenthal* withers under scrutiny. The court should not depart from precedent without sufficient justification, yet neither the state nor the majority offers any justification. The state cannot describe any existing difficulties under *Bergenthal*. It has pointed to no changes or developments in the law that undermine the rationale behind the decision. It has made no showing that the precedent has become detrimental to the administration of the justice system or to the coherence and consistency in the law. There is no reason to depart from 18-year-old precedent.

## IV.

Finally, looking more broadly at the panoply of protections afforded constitutional rights, I would observe that one important consideration has changed since *Bergenthal* was decided: the role of state courts in upholding the federal constitutional rights of people convicted of state crimes is much greater today than it was 18 years ago. The year after *Bergenthal* was decided, the United States Supreme Court began to shift toward state courts much of the responsibility for protecting the constitutional rights of people convicted in state criminal courts. *Wainwright v. Sykes,* 433 U.S. 72 (1977) (overruling *Fay v. Noia,* 372 U.S. 391 (1963), applying state procedural default rules in federal habeas corpus cases under nearly all circumstances). Because the Court has treated federal habeas corpus as an extraordinary remedy in many ways inconsistent with federalism, it has increasingly emphasized the role and competence of state courts.[14] "The states pos-

[14] *See* Erwin Chemerinsky, *Thinking About Habeas Corpus,* 37 Case West. L. Rev. 748, 762–63 (1987).

sess primary authority for defining and enforcing criminal law . . . Federal intrusions into state criminal trials frustrate both the states' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights." *Engle v. Isaac,* 456 U.S. 107, 128 (1982). *See also, Coleman v. Thompson,* — U.S. —, 111 S. Ct. 2546 (1991) (denying habeas corpus to a death-sentenced prisoner because his lawyer had been three days late in filing a notice of appeal of a denial of state habeas corpus).

In light of these increasing limitations on the availability of the writ of federal habeas corpus, our responsibility as a state court to protect federal constitutional rights is ever greater. We must carefully consider our rules of criminal procedure, especially those which will act as procedural bars to collateral review in our courts and in the federal courts. *Wainwright v. Sykes,* 433 U.S. 72 (1977). For 18 years under *Bergenthal,* we have done a good job of providing an adequate state remedy to prisoners seeking review of significant constitutional claims on collateral review. Today, without justification, we abandon that course. We should not so abdicate our responsibility. For the reasons set forth, I dissent.

I am authorized to state that Chief Justice NATHAN S. HEFFERNAN joins this dissent.