STATE of Wisconsin, Plaintiff-Respondent,

v.

Scott A. HEIMERMANN, Defendant-Appellant.†

Court of Appeals

*No. 95–3259. Submitted on briefs August 12, 1996.—Decided
October 2, 1996.*

(Also reported in 556 N.W.2d 756.)

†Petition to review filed.

On behalf of the defendant-appellant, the cause was submitted on the brief of *Scott A. Heimermann*, pro se.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Michael R. Klos*, assistant attorney general.

Before Anderson, P.J., Brown and Nettesheim, JJ.

BROWN, J.  This case involves the writ of error *coram nobis*, which is a tool that enables a trial court to remove erroneous facts from the record and correct its judgment. Below we detail exactly how and when this writ may be used.

The context of our discussion is Scott A. Heimermann's claim that the trial court erred when it declined to issue this writ. Although Heimermann was discharged from probation in 1987, eight years later he filed a petition for a writ of *coram nobis*[1] asking the court to generally reconsider whether his trial attorney was ineffective and to specifically ascertain if his attorney had diligently pursued a possible defense. The trial court denied the petition reasoning that under *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 517 N.W.2d 157 (1994), Heimermann had already exhausted his right to pursue posttrial remedies. In this appeal, Heimermann contends that the court made a legal error when it relied on *Escalona-Naranjo* to dismiss his petition and asks that we direct the trial court to address the merits of his claim.

---

[1] The "writ of *coram nobis*" is also known as the "writ of error *coram nobis*." *Houston v. State*, 7 Wis. 2d 348, 350, 96 N.W.2d 343, 344 (1959). We will use the shorter version.

We ultimately conclude that the trial court correctly declined to consider Heimermann's petition. We agree, however, with Heimermann's argument that the court made a legal error in its analysis of *Escalona-Naranjo*. Because Heimermann was not in custody (on this charge) when he filed his petition, the § 974.06, STATS., remedies were not available to him. Accordingly, the related waiver rules discussed in *Escalona-Naranjo* do not apply to him either.

After reviewing the factual allegations of Heimermann's petition, however, we conclude that the trial court nevertheless reached the correct result when it refused to issue the writ. We see nothing in Heimermann's petition that justifies reopening the record regarding his trial attorney's performance. We affirm the order rejecting Heimermann's petition for a writ of *coram nobis*.

## BACKGROUND

In January 1986, the trial court accepted Heimermann's guilty plea to one count of theft by fraud. Heimermann admitted to falsifying loan applications that he made with a credit union in the city of New Castle. The court subsequently sentenced Heimermann to five years of probation.[2]

Heimermann later filed motions to withdraw this plea. He argued that his trial counsel was ineffective and poorly prepared. As a result, Heimermann claimed that he was pressured into pleading guilty. Heimermann specifically alleged that his trial counsel had failed to thoroughly investigate if credit union

---

[2] Heimermann previously entered a plea to the same charge in April 1985, but the trial court later permitted him to withdraw this earlier plea because of concerns that it may not have been voluntarily and knowingly entered.

officers had independent knowledge that the information in his loan applications was false, and hence, the credit union could not have been actually defrauded. The trial court, however, denied these motions and this court affirmed his conviction. *See State v. Heimermann*, No. 86-1954-CR, unpublished slip op. (Wis. Ct. App. June 24, 1987).

In July 1995, Heimermann filed a petition with the trial court for a writ of *coram nobis*. Although the Division of Corrections discharged his sentence on this theft by fraud charge in April 1987, Heimermann was incarcerated on other charges when he filed this petition.

Heimermann's petition asserts that he has an impartial witness who can corroborate his continuing theory that credit union personnel knew the information in his application was false. He also argues, as he did previously, that his trial attorney knew this to be a viable defense, but failed to develop the necessary facts. Heimermann thus claims that he has identified a "reasonable basis in the record for disturbing the findings [of] the Trial Court . . . ."

The trial court, however, dismissed the petition. It found that Heimermann had previously litigated the alleged ineffectiveness of his trial counsel. Accordingly, the court reasoned that the supreme court's holding in *Escalona-Naranjo* demanded that it dismiss Heimermann's request for this alternative chance at postconviction relief.

## THE WRIT OF *CORAM NOBIS*

■

We start with some background information about the writ. The writ of *coram nobis* is a common law remedy which empowers the trial court to correct its

own record. *Jessen v. State*, 95 Wis. 2d 207, 212, 213-14, 290 N.W.2d 685, 687, 688 (1980). Before states began to develop statutory postconviction remedies in the late 1940s, this common law remedy was a very important means of correcting errors in trial proceedings. *See generally* Jeffrey T. Renz, *Post-Conviction Relief in Montana*, 55 MONT. L. REV. 331, 332-34 (1994). Indeed, since this writ was the main avenue to secure posttrial relief, some cases from other jurisdictions involve alleged errors which we would now see litigated in another manner, such as an allegation of race-based jury exclusion. *See id.* at 333 (citing *Fondren v. State*, 199 So. 3d 625 (Miss. 1967)).

In Wisconsin, the scope of this writ has decreased significantly from its common law origins. Our supreme court has held that "[w]here there is a remedy afforded by a writ of error or by appeal the writ of *coram nobis* will not lie." *Houston v. State*, 7 Wis. 2d 348, 350, 96 N.W.2d 343, 344 (1959). The legislative comments accompanying Laws of 1969, ch. 255, which implemented § 974.06, STATS., are a further sign of the procedural limitations against the use of this writ. These legislative comments explain how these newer statutory remedies are designed to "supplant" other special writs. *See* § 974.06, WIS. STATS. ANN. (West 1985); *see also* WISCONSIN ANNOTATIONS, § 974.06 (5th ed. 1970) (Editor's Note) (describing how these statutory remedies superseded an earlier statute that gave statutory recognition to the writ of *coram nobis*).

The judicial and legislative development of other posttrial procedures seems to have equally impacted the possible substantive uses of this writ. The supreme court's most recent discussion states that a person

seeking this writ must meet the two-part requirement
of showing:

> the existence of an error of fact which was unknown
> at the time of trial and which is of such a nature
> that knowledge of its existence at the time of trial
> would have prevented the entry of judgment.

*Jessen*, 95 Wis. 2d at 214, 290 N.W.2d at 688. To better
illustrate the "nature" of facts subject to review under a
writ of *coram nobis*, we will review some of the cases
that the *Jessen* court relied on.

We start with *In re Ernst*, 179 Wis. 646, 649, 192
N.W. 65, 66 (1923), which set out examples of when a
writ could be used. There, the court explained that a
trial court could possibly use the writ to correct its
mistaken belief about the age of a minor child or to
clarify how its discovery that a party had died affected
its earlier judgment. Based on these two examples, we
gather that the petitioner must not only identify a
mistake in the record, but this part of the record must
have also been crucial to the court's ultimate findings.

In addition, we find significance in the supreme
court's statement in *Houston* that this writ cannot be
used as a means to remove perjured testimony from the
record. The *Houston* court explained that a writ of
*coram nobis* could not be used to correct parts of the
record substantiated by perjured testimony because
the factfinder's judgment would be construed as a
statement that the perjured testimony was indeed
true. *See Houston*, 7 Wis. 2d at 352, 96 N.W.2d at 345.

■

We read *Houston* to establish the following
limitation. If the factfinder has already been directed
to an issue and has passed judgment on this issue, then
a writ of *coram nobis* may not be used to simply revisit

this issue. As one commentator looking at the Wisconsin cases persuasively described, the writ "will not lie for after-discovered evidence which aims at correcting an error of fact directly passed on." *See* Albert F. Neumann, Comment, *Criminal Law—Writ of Error Coram Nobis*, 11 WIS. L. REV. 248, 253 (1936).

The common law history and relevant case law may be distilled to provide the following standards. A person seeking a writ of *coram nobis* must pass over two hurdles. First, he or she must establish that no other remedy is available. What this means for criminal defendants is that they must not be in custody because if they are, § 974.06, STATS., as an example, provides them a remedy. Second, the factual error that the petitioner wishes to correct must be crucial to the ultimate judgment *and* the factual finding to which the alleged factual error is directed must not have been previously visited or "passed on" by the trial court. With these principles in hand, we now turn to the trial court's treatment of Heimermann's petition.

### ESCALONA-NARANJO AND THE WRIT OF CORAM NOBIS

We begin with Heimermann's claim that the trial court improperly ruled that *Escalona-Naranjo* legally barred it from considering his petition. This issue is a question of law and we therefore owe no deference to the trial court's conclusions. *See First Nat'l Leasing Corp. v. City of Madison*, 81 Wis. 2d 205, 208, 260 N.W.2d 251, 253 (1977).

The supreme court's decision in *Escalona-Naranjo* addressed the specific question of whether a criminal defendant "is prohibited from raising his [or her] claim of ineffective assistance of trial counsel in a

postconviction motion under sec. 974.06, Stats., if such a claim could have been raised in a previously filed sec. 974.02 motion and/or on direct appeal." *Escalona-Naranjo,* 185 Wis. 2d at 173, 517 N.W.2d at 158-59. The supreme court answered "yes" and held that the second postconviction claim would be barred. *See id.* at 173, 517 N.W.2d at 159.

Heimermann's petition for a writ of *coram nobis* thus presents a similar scenario to the one that the supreme court faced in *Escalona-Naranjo.* After the trial court accepted Heimermann's plea in 1986 and entered judgment, Heimermann unsuccessfully pursued several posttrial motions and an appeal to this court.

Now in this case, several years later, Heimermann again asked the trial court to address this question, although this second time he did so via a petition for a writ of *coram nobis.* We thus see the logic in the trial court's decision to apply the rule set out in *Escalona-Naranjo* that defendants may not relitigate previously raised posttrial issues.

However, there is one important fact which distinguishes this scenario from the one faced by the court in *Escalona-Naranjo.* Unlike that defendant, Heimermann is no longer in custody on the charges. And because Heimermann is not in custody, he cannot make use of the remedies set out in § 974.06, STATS. As the supreme court forcefully explained in *Jessen,* "the remedy provided in sec. 974.06 is available solely to those persons in custody under sentence of a court." *See Jessen,* 95 Wis. 2d at 211, 290 N.W.2d at 687.

Therefore, we hold that the trial court erred when it ruled that *Escalona-Naranjo* served to bar Heimermann from seeking a writ of *coram nobis.* Since

the § 974.06, STATS., remedies are not available to Heimermann, he has no other means by which to pursue his challenge and has accordingly met the first hurdle to this writ.

THE LEGAL SUFFICIENCY OF HEIMERMANN'S PETITION

Having concluded that the trial court erred in its analysis of *Escalona-Naranjo* and that Heimermann has met the first hurdle, we will proceed to the second hurdle of whether the factual error that Heimermann identifies is worthy of the trial court's further consideration.

While the decision of whether to issue a writ of *coram nobis* and reopen the record is generally left to the trial court's discretion, *see Jessen*, 95 Wis. 2d at 213, 290 N.W.2d at 688, our conclusion that the trial court made a legal error when it failed to even consider issuing the writ does not dictate that we remand this case for further proceedings.

Under *State v. Holt*, 128 Wis. 2d 110, 124-25, 382 N.W.2d 679, 687 (Ct. App. 1985), this court has the power to affirm a trial court's ultimate ruling even though its reasoning was incorrect. In addition, this court can review documentary evidence, accept it as true, and then measure if the party has stated a claim as a matter of law. This is the exact methodology we employ when we conduct our independent review of alleged errors in summary judgment proceedings. *See generally Preloznik v. City of Madison*, 113 Wis. 2d 112, 115-16, 334 N.W.2d 580, 582-83 (Ct. App. 1983). So even though the decision of whether to grant a writ of *coram nobis* is left to the discretion of the ruling trial court, we can nonetheless conduct an independent review of Heimermann's petition and determine

whether, as a matter of law, there is any legal basis for such an exercise of discretion.

As we outlined previously, the specific issue that Heimermann hopes to clarify with this writ is whether his trial counsel failed to fully investigate the case and prepare his defense. The "fact" that Heimermann thus hopes to correct is the trial court's earlier posttrial finding that his trial attorney performed adequately.

The information which Heimermann presents to support his petition consists of the testimony gathered from his trial attorney during his original postconviction challenge. The petition particularly emphasizes how the trial court learned during the original *Machner*[3] hearing that Heimermann had an independent witness, an "Attorney Lonergan," who could have verified Heimermann's long-standing theory that the credit union managers knew that he had lied on the loan applications. Heimermann claims "the Courts never in thier [sic] decisions addressed the corroboration of Attorney Lonergan" and that this "omission" is now subject to correction via a writ of *coram nobis*.

The transcript from the original *Machner* hearing verifies Heimermann's claim to the extent that his trial counsel testified that he had spoken with Lonergan and that Lonergan had suspicions about what the credit union officials actually knew. But just because Heimermann has potentially spotted something that the trial court may have omitted from its analysis does not entitle him to a writ of *coram nobis*.

As we have emphasized in this opinion, the second hurdle for a petitioner seeking a writ of *coram nobis* is

---

[3] *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

to show how the fact sought to be corrected is not related to an issue that the trial court already visited, or "passed on." Here, however, Heimermann hopes to do exactly that. He wants the trial court to reopen the issue of his trial attorney's performance and allow Heimermann to explain to the court exactly how the "corroboration" from Lonergan might affect its earlier judgment that his trial counsel was adequate. Since the issue was clearly before the court during the *Machner* hearing and, in fact, since this testimony about Lonergan was clearly before the trial court as well, we may simply presume that the trial court discounted it in the same manner that we may presume that the factfinder allegedly subject to correction via a writ of *coram nobis* found perjured testimony to be true. *See Houston*, 7 Wis. 2d at 352, 96 N.W.2d at 345. In sum, Heimermann's petition is fatally flawed because it is aimed at an issue already "passed on" by the trial court.

*By the Court.*—Order affirmed.