Gregory LeMAY, Petitioner,

v.

Donald GUDMANSON, Respondent.

Civ. A. No. 93–C–436.

United States District Court, E.D. Wisconsin.

Aug. 24, 1995.

Scott M. Phillips, Milwaukee, WI, for petitioner.

Jerome S. Schmidt, Assistant Attorney General, Madison, WI, for respondent.

## DECISION AND ORDER

TERENCE T. EVANS, Chief Judge.

Almost 10 years ago, on December 18, 1985, Gregory LeMay pled "no contest" to two serious felony charges in the circuit court for Winnebago County, Wisconsin. He was sentenced to serve a term of 15 years. Following his conviction, after a number of rounds in state court, LeMay filed a habeas corpus petition in this court in 1993. I dismissed the petition on April 19, 1994. In the order dismissing his petition I described LeMay's crimes, noting:

> During the early morning hours of September 28, 1985, Timothy Thibault and his wife were sleeping in their town house on Stillwell Avenue in Oshkosh. The Thibaults had lived in the town house since June of 1985. Around 3 a.m., their attention was directed to an intruder in the vicinity of their second-floor bedroom. Mr. Thibault engaged the intruder, and a struggle ensued. During the struggle, Thibault was stabbed with a steak knife. When the struggle started, Mr. Thibault says, the intruder yelled, "You are a dead motherfucker, you're dead." The intruder turned out to be Gregory LeMay, the petitioner in this habeas corpus proceeding. At the time, LeMay was only a few months into a parole term following 1981 convictions for armed robbery and sexual assault.

> During the struggle the police were called, and Paul Michler of the Oshkosh Police Department responded. Mr. LeMay was arrested at the scene and subsequently charged with armed burglary (unarmed during the entrance to the residence, but arming himself with a dangerous weapon—the steak knife from the Thibault first-floor kitchen—while there) and endangering safety by conduct regardless of life. On December 9, 1985, LeMay entered pleas of no contest to both charges, and 9 days later, on December 18, he was sentenced to concurrent terms of 15 and 5 years on the two charges.

Mr. LeMay's petition for a writ of habeas corpus was filed in this court on April 30, 1993. In denying the petition last year, I lamented the fact that courts were still considering his claims even though he had entered a no contest plea to the charges 8½ years ago. A copy of my unpublished order of April 19, 1994, is affixed as an addendum to this decision.

My dismissal of this case last year, of course, was not the end of the story. Mr. LeMay appealed, and 9½ years after the crime and his no contest plea—on June 15, 1995—the Court of Appeals for the Seventh Circuit, in an unpublished order, affirmed my decision in most regards, but reversed for further proceedings regarding one claim—whether Mr. LeMay was denied the effective assistance of counsel almost 10 years ago because of the "failure of his attorney to appeal the fifteen-year sentence he received." [1] Failure to appeal when the defendant requests an appeal, the court said, "is *per se* ineffective assistance of counsel, without any requirement of showing prejudice."

I have examined the record with an eye toward determining what must be done in response to the court of appeals' order. The usual response to such an order is to schedule a hearing at which Mr. LeMay (and perhaps his father) could say he wanted to appeal and his attorney, Ms. Mary Lou Robinson, could dispute that. To do that, though, without reviewing the record, would be, I believe, irresponsible. This is a situation which deserves a careful look to see what really happened. When a licensed at-

1. A copy of the 3–page unpublished order of the court of appeals is attached in the addendum.

torney in good standing, such as Ms. Robinson, is accused of abandoning her client and is going to be hauled into a federal courtroom for a grilling 10 years after the fact, it is fitting that a court determine that the allegation have some substance. An attorney deserves nothing less. Claims of "ineffective assistance of counsel," of course, are easily made. And today, regrettably, appellate courts seem to have forgotten that courts, not too long ago, indulged in the presumption that an attorney acted competently and ethically on behalf of his or her clients. A presumption, I submit, that should be reinvigorated today.

The court of appeals has said that I must, 10 years after the fact, "determine the circumstances behind LeMay's failure to appeal: did LeMay's attorney abandon him, or did LeMay agree with his attorney's advice that an appeal might be counterproductive and decide not to appeal? The Wisconsin courts have made no findings on these issues, so the district court must." Slip opinion at 1199.

As a sidelight, probably the most creative suggestion for how to proceed now in this old case comes from Mr. LeMay himself. In a letter to me dated July 12, 1995, LeMay says his mandatory release date is September 28, 1995. That is the date on which he will be released from prison unless he loses good time between now and then. Given the fact that the sentence he attacks is nearly over, he says:

> My Mandatory Release date is September 28, 1995. If it pleases the court, we could save a lot of time, trouble and expense for everyone concerned by commuting my sentence to time served, once my MR date is reached.

I only wish it were that simple. It isn't, so I must return to the issue that remains standing in the case. The entire statement of the court of appeals on the issue is as follows:

> LeMay's last effort at raising an ineffective assistance of counsel claim involves the failure of his attorney to appeal the fifteen-year sentence he received. LeMay claims that he asked his attorney to appeal, immediately after he was sentenced.

The attorney wrote LeMay that she did not think an appeal wise, explaining, "I think the likelihood that the judge would increase [your sentence] is about as good as the judge would decrease it" due to the publicity the case received. No appeal took place, though it is unclear why. Normally, reasonable strategic choices of counsel are not to be second-guessed by federal habeas corpus review. *Strickland v. Washington*, 466 U.S. 668, 690–91, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984). Given LeMay's criminal history of convictions on two counts of first-degree sexual assault and two counts of armed robbery, among others, and given that LeMay waited less than three months from being released on parole to commit a violent attack in the course of a home invasion, one might suggest that a fifteen-year sentence is charitable, and that an appeal would have been foolish.

Nevertheless,

> [i]f the defendant wants to take an imprudent appeal, the lawyer properly may try to talk him out of it.... But if the defendant nonetheless insists on appealing, the lawyer must file the notice of appeal and represent his client earnestly unless relieved by the court of appeals.

*Castellanos v. United States*, 26 F.3d 717, 719 (7th Cir.1994). Failure to appeal a judgment that a defendant desired to appeal is *per se* ineffective assistance of counsel, without any requirement of a showing of prejudice. *Id.* The state court incorrectly held on post-conviction review that any failure to appeal did not prejudice LeMay. The district court must determine the circumstances behind LeMay's failure to appeal: did LeMay's attorney abandon him, or did LeMay agree with his attorney's advice that an appeal might be counterproductive and decide not to appeal? The Wisconsin courts have made no findings on these issues, so the district court must.

My decision on Mr. LeMay's petition, as I stated, was filed on April 19, 1994. The *Castellanos* decision, on which the court of appeals relies, was filed on June 10, 1994. *Castellanos* actually involved two separate

district court cases, one from Illinois and one from Indiana. The district judges in those cases—Richard Mills in the Southern District of Illinois and S. Hugh Dillin in the Southern District of Indiana—dismissed federal habeas corpus petitions alleging ineffective assistance of counsel because attorneys allegedly abandoned defendants by not appealing convictions. In vacating the district court orders, the court of appeals in *Castellanos,* for the first time in the Seventh Circuit, established the *per se* rule on which it relied in ordering further proceedings in Mr. LeMay's case.

Given the fact that the *per se* rule was not clearly established as controlling law in the Seventh Circuit until *Castellanos* was decided one year ago, it seems somewhat uncharitable to me for the court of appeals to say, as it does above, that "the state court incorrectly held … that any failure to appeal did not prejudice LeMay." The Wisconsin decision referred to will be discussed below.

In *Castellanos,* which involved petitions pursuant to 28 U.S.C. § 2255, the court considered a question which was clearly answered in other circuits but to which the answer remained "cloudy" (at 719) in the Seventh Circuit. The question was "whether a prisoner who contends that his attorney rendered ineffective assistance by failing to perfect an appeal from his conviction must show that he would have prevailed had an appeal been taken." The court said "no"; "[a]bandonment is a *per se* violation of the sixth amendment." At 718.

The first step in prevailing on a claim that counsel was ineffective for failure to file a notice of appeal would be to establish clearly that the defendant wanted to pursue an appeal—that he was not foregoing an appeal, either for strategic reasons or simply because he agreed that no basis for an appeal existed.

To show that he wanted an appeal filed, a defendant, or someone on his behalf, could testify at a hearing that he told the attorney to appeal. A defendant could also place in the record, for instance, letters to his attorney stating his desire to appeal or affidavits stating that he instructed his attorney to file an appeal.

Mr. LeMay, in fact, relies on an affidavit from his father and a letter from his attorney to support his claim that he wished to appeal. These are the documents on which he bases his argument that his counsel, attorney Robinson, was ineffective.

The documents, however, show quite the opposite. When viewed in light of Wisconsin appellate procedure as it existed in 1985, the documents reveal that an appeal was not contemplated. Although in reversing my decision the Seventh Circuit Court of Appeals said "[t]he attorney wrote LeMay that she did not think an appeal wise," what attorney Robinson actually said was, "I do not think it would be wise for you to go back for a review of sentence within 90 days." Viewing the entire record, in light of Wisconsin's postconviction procedure, it is easy to conclude that attorney Robinson was *not* discussing an appeal.

Mr. LeMay contends here and has contended in state court that attorney Robinson was in fact talking about an appeal. In an affidavit, dated December 14, 1992, and filed in the Supreme Court of Wisconsin in connection with another matter, Mr. LeMay states:

> Attorney Mary Lou Robinson failed to file any appeal. See letter from Attorney Robinson to defendant, marked as Appendix 102A, and Exhibit 102A. Also, see defendant's Father's affidavit marked as Appendix 101, and Exhibit 101.

In the 1992 affidavit from his father referred to above, Joseph LeMay states that approximately one month after his son's sentencing, during the month of January 1986, "I suggested to my son that he contact his attorney, Mary Lou Robinson to file for a review of sentence. My son told me attorney Robinson sent him a letter recommending against that."

Joseph LeMay refers to a "review of sentence." He did not suggest that "a review" be sought until one month after sentencing. By then, the time for a direct appeal, under Wisconsin law, had passed. At sentencing, Mr. LeMay was given notice by the sentencing judge that if he wished to pursue postconviction remedies and appeal, he must file

a statement of his interest in doing so within 20 days. In addition, the clerk was instructed to give him a "written instruction as it relates to the time limits that are available . . . ." He was told that if his present counsel could no longer represent him, the public defender would be appointed to represent him. It is apparent that Joseph LeMay said what he meant: Gregory LeMay should ask for a review of the sentence, not an appeal. A review of the sentence, of course, would be a proceeding before the sentencing court, not an appellate court.

That the sentencing court, not an appellate court, was the object of Mr. LeMay's desire is obvious. If he went to an appellate court, what would he say? That the trial judge abused his discretion by imposing a 15-year term—less than half the available time—for his violent crimes committed just a few months into a parole term that followed previous convictions for armed robbery and sexual assault? One can only imagine how inhospitable a Wisconsin appellate court would be to that sort of claim. Mr. LeMay had no real appellate options here. And even though his chances of convincing the sentencing judge to reduce his term were hardly any brighter, they were the only thing he had going for himself.

Ms. Robinson's letter to LeMay dated February 3, 1986, refers to a sentence modification request, not an appeal:

I do not think it would be wise for you to go back for a *review of sentence* within 90 days. I think that the likelihood that the judge would increase it is about as good as the judge would decrease it. I talked to your probation officer and I don't think that she had at all overlooked the medical background, but rather I think that she and I both agreed that it was an issue better raised inside the institution in terms of the appropriateness of placement or in the alternative, if, in fact, your condition worsens so that the institution was not an appropriate facility that you might use that as a reason to petition for a release. I do not think that given the publicity your case got and the nature of the crimes that any type of sympathy factor would have done anything other than aggravate Judge

Crane. The record in regard to your medical situation is in the possession of the probation agent and I do not know if it is possible to get photocopies. (Emphasis added.)

Mr. LeMay states in a brief submitted simultaneous with his petition in this case, that:

Attorney Mary Lou Robinson failed to file on the defendant's behalf a timely notice of motion of his intent to pursue post-conviction relief pursuant to § 809.30 Wis.Stats., and told the defendant on the day of sentencing, that she would file an appeal on the defendant's behalf, after the defendant served approximately two years of his 15-year sentence, because she didn't want to do it now, for fear she would make the trial court judge angry . . . .

This latter allegation—that Ms. Robinson said she would file an appeal after he had served 2 years of his 15-year sentence—alarmed the attorney appointed in this court to pursue Mr. LeMay's section 2254 petition. His brief, filed October 28, 1993, includes the following:

Not only was trial counsel's performance deficient and prejudicial both prior to and at sentencing, but it was equally so with respect to the petitioner's post-conviction rights. More specifically, attorney Robinson failed to file on petitioner's behalf a timely notice of motion of his intent to pursue postconviction relief pursuant to Section 809.30, Wisconsin Statutes. Again, *quite remarkably,* after the petitioner was sentenced on December 18, 1985, he was told that same day by attorney Robinson that she would file an appeal on his behalf after he served two years of his 15 year sentence. Attorney Robinson told the petitioner that she did not want to file an appeal at this time since this would probably anger the trial court judge . . . . In fact, after the petitioner further pressed Ms. Robinson about an appeal in December 1985, he received a letter back from her telling him such an appeal was not a good idea. [Emphasis added.]

The letter to which the brief refers is the same letter from Ms. Robinson which I quoted above, in which Ms. Robinson is referring

to a sentence modification, not an appeal. It would, indeed, be "quite remarkabl[e]" for an attorney to tell her client that she would appeal after two years had passed. Although Wisconsin provides for the extension of time to appeal a criminal conviction, (see 809.82(2)(b)), it would probably nevertheless be a sign of incompetence to tell a client to wait to file. Would she be likely to put such a suggestion in writing? That's not likely, and, in fact, that is not what Ms. Robinson did.

It may be possible that Mr. LeMay was confused about what Ms. Robinson was telling him. Even if his confusion is understandable, the rest of us—in fairness to Ms. Robinson as well as Mr. LeMay—need to be clear about what was going on.

Part of the problem, ironically, is that Wisconsin provided, in the relevant time period, several different avenues by which a convicted person could try to obtain postconviction relief. In 1984, Wisconsin instituted a procedure specifically to expedite requests for modifications of sentence—and to make those requests easier to make. Section 973.19, effective July 1, 1985, provides that a person, who is not proceeding under the appeal procedure announced in section 809.30, may within 90 days after the sentence is imposed, move the court to modify the sentence. According to Wisconsin Judicial Council Notes, the section "is intended as an expeditious alternative to the procedure prescribed in s. 809.30(2) when the only claim for postconviction relief relates to the severity of the sentence.... This section will probably be most frequently used in guilty plea cases, although it is not limited to such cases." The Notes also point out that filing a motion under this section waives relief under section 809.30(2), the section regarding appeals. The 90–day limit in this statute is certainly what Ms. Robinson, an experienced attorney, was referring to in her letter.

Wisconsin also provides for the appeal procedure outlined in section 809.30. Section 809.30 should be read in conjunction with section 974.02, which provides for a postconviction motion in the trial court prior to appeal unless the "grounds are sufficiency of the evidence or issues previously raised." Sections 809.30 and 974.02 were subject to time limits, which, however, the court could extend upon a showing of good cause. *State v. Harris*, 149 Wis.2d 943, 440 N.W.2d 364 (1989).

Then, in addition to these avenues, a defendant had another remedy: a motion pursuant to § 974.06, Wisconsin Statutes. In 1985, the statute was as follows:

(1) After the time for appeal or postconviction remedy provided in s. 974.02 has expired, a prisoner in custody under sentence of a court claiming the right to be released upon the ground that the sentence was imposed in violation of the U.S. constitution or the constitution or laws of this state, that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

The statutory scheme was that a 974.06 motion would be filed in the trial court. If the motion was denied in the trial court, then an appeal could proceed. *See Spannuth v. State*, 70 Wis.2d 362, 234 N.W.2d 79 (1975). Rules of appellate procedure, adopted after *Spannuth*, did not change the requirement that "absent compelling circumstances, a motion to correct the sentence should be directed to the trial court before the sentence is challenged on appeal." *State v. Lynch*, 105 Wis.2d 164, 312 N.W.2d 871 (Ct.App.1981).[2]

This brief review of the statutory scheme in effect at the time of Mr. LeMay's sentencing is given by way of background for evaluating what Mr. LeMay told Ms. Robinson he wanted to do and what her advice was. Mr. LeMay was concerned with the length of his sentence. It may well be that he had wanted to file a postconviction motion, pursuant to section 973.19, which would have had to have

**2.** Although section 974.06 was designed to be analogous to 28 U.S.C. § 2255 and be limited to constitutional questions, it has, until recently at least, been more broadly used, as evidenced by the number of times Mr. LeMay used it to bring himself before the courts. That may be changing. *See State v. Escalona–Naranjo*, 185 Wis.2d 168, 517 N.W.2d 157 (1994).

been filed within 90 days. Ms. Robinson quite wisely cautioned him, as revealed in her letter, that a motion under that statute probably would not be favorably viewed by the judge and that it could result in a longer sentence. Her advice was to wait a couple of years and then return for a modification after the publicity surrounding the case had died down. That was reasonable advice. Mr. LeMay does not contend that he rejected her advice or told her to return to court regardless of whether he would be likely to receive a longer sentence. In fact, that he accepted her advice can be inferred by a statement in his father's affidavit. Joseph LeMay says that after 2 years, he "hand-delivered to attorney Robinson a motion my son had prepared."

It seems to me that Ms. Robinson's advice was unassailable and shows that she understood Wisconsin procedures. Although the attorney appointed in this court found the advice to be "quite remarkable," there is really nothing remarkable about it once the Wisconsin statutory scheme is understood.

Is this a circumstance which should be evaluated under the *Castellanos* doctrine? If Mr. LeMay had clearly wanted to follow the procedures of 809.30 and 974.02, and Ms. Robinson had "abandoned" him by failing to file the proper documents to preserve those rights, the answer would be "yes." That the appeal would have been futile is irrelevant.[3] As the *Castellanos* court stated, if a defendant wants to take an improvident appeal, the lawyer may try to talk him out of it, but if he insists, the lawyer must file the appeal.

Here, however, the documents show that what Mr. LeMay and Ms. Robinson contemplated was to wait until the dust had settled and then ask for a sentence reduction. Mr. LeMay has not established that he was ever contemplating an appeal.

Mr. LeMay never lost the right to file a 974.06 motion and thus to have the trial court *and the appellate court* reconsider his sentence. In fact, Mr. LeMay filed not one but several motions pursuant to section 974.06 and other provisions.

One motion resulted in the decision of the Wisconsin Court of Appeals which the Court of Appeals for the Seventh Circuit found to be "incorrect" because it considered whether Mr. LeMay was prejudiced by the failure to appeal. Mr. LeMay had filed a habeas petition directly with the court of appeals, pursuant to *State v. Knight,* 168 Wis.2d 509, 484 N.W.2d 540 (1992). *Knight,* which is another avenue of relief provided in Wisconsin to defendants, allows habeas petitions based on a claim of ineffectiveness of appellate counsel to be filed originally in the court of appeals. In its decision, filed January 19, 1993, the Wisconsin Court of Appeals did—as the Seventh Circuit said—rely on the prejudice prong of the analysis in denying his petition. However, the court also conducted a review of the record, and its conclusions about what happened are, I believe, the same as mine.

In the state habeas, Mr. LeMay relied on the February 3, 1986, letter from Ms. Robinson to support his allegation that she told him it would be useless to appeal at that time. The court said, "From that letter, it appears LeMay wanted to move the trial court for sentence modification, but Attorney Robinson believed that the trial court would not modify LeMay's sentence due to his medical condition." Later is the statement that "it appears ... that LeMay's interest in an appeal was limited to the possibility of sentence modification." The court went on to say that a defendant may move for sentence modification at any time, and that if Mr. LeMay agreed with Ms. Robinson that a sentence modification motion would be unsuccessful, she was under no obligation to file one. The Wisconsin court concluded—as I do—that "LeMay has not shown that he disagreed at the time with Attorney Robinson's assessment."

The history of Mr. LeMay's postconviction filings in the Wisconsin courts shows that he had several opportunities to raise his claims. In addition to the habeas petition just discussed, Mr. LeMay filed a motion, pursuant to § 974.06, Wisconsin Statutes, claiming in-

---

3. This is a regrettable development. Why court decisions would encourage futile acts is beyond my comprehension.

effective assistance of counsel. On February 16, 1990, the circuit court for Winnebago County denied the motion in a 15–page written decision. Mr. LeMay appealed, and the court of appeals affirmed in a 7–page decision filed March 20, 1991.

Then Mr. LeMay filed a motion to modify his sentence in the circuit court for Winnebago County. On July 11, 1991, the circuit court reconsidered the sentence and denied the motion in a 7–page decision.

Mr. LeMay filed a motion in the circuit court to withdraw his plea. That petition was denied as a successive petition in a 4–page decision on January 30, 1992. Along the way, the Supreme Court of Wisconsin denied review of these decisions.

Although prejudice is no longer a relevant consideration, I will, nevertheless, mention that it seems clear that Ms. Robinson's advice did not result in Mr. LeMay losing the right to have his sentence reconsidered. However, her pessimistic view of his chances for success are borne out by the very clear statements of the trial judge that the sentence he imposed was not an abuse of his discretion.

Let me be clear, though, that the basis of my decision in the present case is that Mr. LeMay has not met the first hurdle in the application of the *per se* rule. If *per se* rules are to be applied, courts must be certain that the underlying premises are established. The documents Mr. LeMay has submitted have established that he did not, in fact, state a desire for an immediate appeal or even persist in his wish to file a state court motion under § 973.19, Wis.Stat.

However, let us suppose for a moment that I found that he had. Let me also assume that I applied the *per se* rule and found that Ms. Robinson was incompetent for her failure "to appeal the fifteen year sentence he received." What then?

Any possible remedy is meaningless at this point. Mr. LeMay has served nearly all of the prison sentence he will be required to serve. Certainly he will have served it by the time there would be a decision on the respondent's almost inevitable appeal if I issued a decision granting the writ. Then if I granted the writ, what would I order? That Mr. LeMay be allowed to go back to the trial judge for resentencing or to appeal—to the very court which has upheld the trial judge's refusal to modify the sentence? Furthermore, is it wise for Mr. LeMay to go back to court complaining of his sentence? Given the fact that Wisconsin is busy trying to keep sex-offenders—into which classification Mr. LeMay neatly fits—in prison beyond the completion of their sentences, *see* Chapter 980, Wisconsin Statutes, wouldn't Mr. LeMay run the very real risk of being sentenced to a longer term and being sent back to prison?

The record in this case, without a further hearing, is more than sufficient to support the finding I have made here. To carefully examine the record—rather than holding a hearing—is, I believe, to attempt to insert some common sense into the situation. Otherwise, 10 years after the crime, a matter of days before the petitioner is released from custody, I would be holding a hearing to answer a question the record does not support the asking of and on which, if Mr. LeMay prevailed, there is no remedy.

IT IS THEREFORE ORDERED that the section 2254 petition of Gregory LeMay is DENIED.

## APPENDIX

United States District Court
Eastern District of Wisconsin

### *ORDER*

During the early morning hours of September 28, 1985, Timothy Thibault and his wife were sleeping in their town house on Stillwell Avenue in Oshkosh. The Thibaults had lived in the town house since June of 1985. Around 3 a.m., their attention was directed to an intruder in the vicinity of their second-floor bedroom. Mr. Thibault engaged the intruder, and a struggle ensued. During the struggle, Thibault was stabbed with a steak knife. When the struggle started, Mr. Thibault says, the intruder yelled, "You are a dead motherfucker, you're dead." The intruder turned out to be Gregory LeMay, the petitioner in this habeas corpus proceeding. At the time, LeMay was only a

few months into a parole term following 1981 convictions for armed robbery and sexual assault.

During the struggle the police were called, and Paul Michler of the Oshkosh Police Department responded. Mr. LeMay was arrested at the scene and subsequently charged with armed burglary (unarmed during the entrance to the residence, but arming himself with a dangerous weapon—the steak knife from the Thibault first-floor kitchen—while there) and endangering safety by conduct regardless of life. On December 9, 1985, LeMay entered pleas of no contest to both charges, and 9 days later, on December 18, he was sentenced to concurrent terms of 15 and 5 years on the two charges. He did not appeal. Eventually, about 3 years later, he filed a state postconviction motion pursuant to Wisconsin Statute § 974.06 in the Winnebago County circuit court. In the motion for postconviction relief, Mr. LeMay alleged that his attorneys (first George Curtis and later Mary Lou Robinson) were ineffective when they represented him on the charges. The motion was denied on February 16, 1990. In denying the motion, the state trial court judge noted that the petition for postconviction relief merely contained "self-serving factual statements and conclusory allegations not supported by the record." The Wisconsin Court of Appeals affirmed the decision of the circuit court.

It seems almost inconceivable to me that now, almost 8½ years after the nocturnal entry into the Thibault residence, a court is still entertaining requests for relief by Mr. LeMay. Mr. LeMay's petition for habeas corpus relief raised questions that initially required a review of the usual grist of habeas litigation—whether the petition contained "exhausted" state court claims. The procedural issues have now been resolved, and I will consider the three issues raised by Mr. LeMay on the merits. In doing so, I lament the fact that our system of criminal jurisprudence allows these kinds of cases to go on and on indefinitely. Given this sort of situation, it is understandable why some people have lost faith in the justice system. The system certainly is not resolving cases like this in anything approaching an efficient manner. If Mr. LeMay has a valid beef, it should have been resolved long ago, not 8 years into his prison sentence. If his claims have no merit, they should have been dismissed—with finality—long ago. Now to the merits of Mr. LeMay's claims.

Mr. LeMay's first complaint is that the prosecutor breached a plea agreement with him by failing to recommend to the sentencing judge that he receive 5–year concurrent prison terms upon acceptance of his pleas of no contest to the two charges against him. The prosecutor, allegedly in violation of the plea agreement, recommended the maximum sentence of 35 years. As previously noted, the sentence actually received by Mr. LeMay amounted to a total term of 15 years.

In habeas corpus proceedings factual findings made in state court are binding on federal courts. *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). The Wisconsin trial court rejected the contention that a plea agreement was breached when it denied relief to Mr. LeMay under Wisconsin Statute § 974.06. In fact, the claim by Mr. LeMay in state court was that the breach of the oral plea agreement occurred when the prosecutor recommended a 35–year prison term instead of a *15–year* term. The claim now that an oral promise to recommend a *5–year* term was breached simply has no credibility.

Mr. LeMay's second contention is related to his first claim. His second claim is that his attorney at the plea and the sentencing proceeding, Ms. Robinson, was ineffective because she failed to object to the prosecutor's recommendation of 35 years and failed to point out that the recommendation was a breach of an oral plea agreement. This claim also lacks merit.

It is inconceivable to me that a defense attorney in good standing would sit silent in a courtroom and allow a prosecutor to make a recommendation of a sentence that exceeded an agreed-to sentence sevenfold. It is also inconceivable that Mr. LeMay would have sat quietly in the courtroom and allowed this sort of thing to occur if an agreement by the prosecutor was breached as he alleges now that it was. What seems abundantly

clear from the record, and the lack of a record, is that there was in fact no such plea agreement offered by the state. The contention that there was such an agreement and that it was so outrageously breached is preposterous. To believe that such a thing occurred would be to conclude that Ms. Robinson was in cahoots with the state, and that sort of a conclusion cannot be drawn on the basis of what has been presented here in this case. There is nothing to even remotely suggest that attorney Robinson would behave in such a fashion. Mr. LeMay's newly amended statement as to what he now believes the plea agreement sentencing recommendation to have been and the self-serving affidavit of the defendant's father are entitled to no weight this late in the game.

Mr. LeMay, as a second prong to his second claim, alleges that his first attorney, George Curtis, had a conflict of interest and that he therefore rendered ineffective assistance in the case. Mr. Curtis represented Mr. LeMay through the preliminary hearing and withdrew, because of a conflict of interest, prior to Ms. Robinson's entry into the case.

Even assuming that Mr. Curtis rendered ineffective assistance of counsel (an assumption that would be impossible to make on the basis of this record), Mr. Curtis had nothing to do with the entry of the no-contest pleas by Mr. LeMay. The entry of those pleas, if voluntary, waive any defects in the proceedings up until that point. I conclude here that the pleas of no contest by Mr. LeMay were freely and voluntarily entered.

My conclusion as to the voluntariness of the plea is easily reached. Given the facts in this case, what were Mr. LeMay's legitimate alternatives as his trial approached? He could have persisted in a plea of not guilty and gone to trial. Had he done so, it is obvious from the undisputed record in this case that he would have been quickly convicted. Given the certainty of conviction, it is clear that his best course of action was to plead guilty or no contest and hope for the best. Had he gone to trial and perhaps perjured himself on the stand, the 35–year sentence recommended by the prosecutor probably would have looked much more attractive to the judge. His plea of no contest to the charges was obviously his best course of action, and any alleged conflicts of interest by Mr. Curtis early in the case do not, at this point in time, inure to the benefit of Mr. LeMay.

Lastly, Mr. LeMay contends that his elderly no-contest plea must be vacated because he did not know the "elements of the crime of armed burglary" when the plea was offered. This contention is without merit. Before accepting the plea of no contest, the trial judge explained that the elements on the armed burglary count were that an entry was made into a place with intent to commit a felony and that the defendant, though unarmed when he entered, armed himself with a dangerous weapon, and that the actions were undertaken without the consent of the persons in lawful possession of the premises. Just what more should have been said to the defendant is uncertain. The explanation of the trial judge, standing alone, was more than sufficient to support a finding that Mr. LeMay knew what the charge was all about. Coupled with the entire record of this case, including the defendant's colloquy with the court commissioner early on and the preliminary hearing that was conducted on October 8, 1985, lead to the inescapable conclusion that Mr. LeMay knew what the charges were and that his plea of no contest to them was freely and voluntarily entered.

For all of these reasons, the petition for a writ of habeas corpus is DENIED. In denying the petition, I want to compliment the attorney for the state, Jerome S. Schmidt, for the presentation he has made, and also to thank and compliment Milwaukee attorney Scott Phillips, who was appointed by the court to represent Mr. LeMay in this case. Mr. Phillips did a find job on his submission to the court on Mr. LeMay's behalf.

SO ORDERED at Milwaukee, Wisconsin, this 19th day of April, 1994.

BY THE COURT:
/s/ Terence T. Evans
TERENCE T. EVANS
CHIEF JUDGE

APPENDIX

United States Court of Appeals

For the Seventh Circuit

Chicago, Illinois 60604

Submitted June 7, 1995 *

Decided June 15, 1995

Before

Hon. Richard A. Posner, Chief Judge

Hon. Wilbur F. Pell, Jr., Circuit Judge

Hon. Jesse E. Eschbach, Circuit Judge

No. 94–2190

GREGORY LEMAY, *Petitioner–Appellant,*

*v.*

DONALD GUDMANSON, *Respondent–Appellee.*

Appeal from the United States District

Court for the Eastern District of

Wisconsin.

No. 93 C 436

Terence T. Evans,

*District Court Judge.*

### Order

Gregory LeMay pleaded no contest to charges of armed burglary and endangering safety by conduct regardless of life stemming from a 1985 incident where it was alleged that he broke into an Oshkosh residence at three in the morning, armed himself with a knife, hooded himself with a blanket, and, yelling insults and "You are dead!", stabbed the homeowner who confronted him. He was sentenced to a term of fifteen years.

LeMay raises a § 2254 claim on the argument that he had a plea agreement for a five-year term, that the state breached that

agreement by asking for a thirty-five year term, and that his attorney rendered ineffective assistance by failing to bring the sentencing court's attention to the agreement. However, the Wisconsin court, on postconviction review, found that no such plea agreement existed. This finding is presumed correct, 28 U.S.C. § 2254(d), and we are required to honor it. It is certainly not a credibility determination we would be inclined to reverse, given that LeMay's original claim before the state court on post-conviction appeal was that the plea agreement was for *fifteen* years. These claims melt away entirely.

LeMay raises a further ineffective assistance of counsel claim stemming from the fact that his original attorney was required by the state court to recuse himself after his firm hired an attorney from the prosecutor's office who worked on LeMay's case. The state court found that there was no prejudice from this "conflict" (a conflict that could only disadvantage the prosecution, if anyone), and that the "representation of the defendant was more than reasonably effective and adequate". Indeed, it made the further finding that there was not even an actual conflict of interest. The court further noted that LeMay's first attorney had nothing to do with his decision to plead no-contest. Again, we are required by § 2254(d) to defer to the findings of the state court.

LeMay also claims that his no-contest plea must be vacated because he did not know the "elements of the crime of armed burglary" when the plea was offered. The trial judge, however, did explain these elements, and the factual basis was made plain at the preliminary hearing. The state court found that the no-contest plea "was freely, knowingly and intelligently made." As with the other claims, § 2254(d) requires us to find the claim meritless.

LeMay's last effort at raising an ineffective assistance of counsel claim involves the failure of his attorney to appeal the fifteen-year

---

* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No statement has been filed. Accordingly, the appeal is submitted on the briefs and the record.

sentence he received. LeMay claims that he asked his attorney to appeal, immediately after he was sentenced. The attorney wrote LeMay that she did not think an appeal wise, explaining, "I think the likelihood that the judge would increase [your sentence] is about as good as the judge would decrease it" due to the publicity the case received. No appeal took place, though it is unclear why. Normally, reasonable strategic choices of counsel are not to be second-guessed by federal habeas corpus review. *Strickland v. Washington*, 466 U.S. 668, 690–91, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984). Given LeMay's criminal history of convictions on two counts of first-degree sexual assault and two counts of armed robbery, among others, and given that LeMay waited less than three months from being released on parole to commit a violent attack in the course of a home invasion, one might suggest that a fifteen-year sentence is charitable, and that an appeal would have been foolish.

Nevertheless,

[i]f the defendant wants to take an imprudent appeal, the lawyer properly may try to talk him out of it.... But if the defendant nonetheless insists on appealing, the lawyer must file the notice of appeal and represent his client earnestly unless relieved by the court of appeals.

*Castellanos v. United States*, 26 F.3d 717, 719 (7th Cir.1994). Failure to appeal a judgment that a defendant desires to appeal is *per se* ineffective assistance of counsel, without any requirement of a showing of prejudice. *Id.* The state court incorrectly held on post-conviction review that any failure to appeal did not prejudice LeMay. The district court must determine the circumstances behind LeMay's failure to appeal: did LeMay's attorney abandon him, or did LeMay agree with his attorney's advice that an appeal might be counterproductive and decide not to appeal? The Wisconsin courts have made no findings on these issues, so the district court must.

We AFFIRM in part and REVERSE in part the decision of the district court denying the petition for habeas corpus, and remand for further proceedings consistent with this opinion. *Cf. Castellanos*, 26 F.3d at 720.