In the

# United States Court of Appeals

### For the Seventh Circuit

No. 01-3867

ALONZO R. PERRY,

*Petitioner-Appellant,*

v.

GARY R. MCCAUGHTRY, WARDEN,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 99 C 1495—**Lynn Adelman**, *Judge.*

ARGUED APRIL 2, 2002—DECIDED SEPTEMBER 23, 2002

Before POSNER, MANION, and KANNE, *Circuit Judges.*

MANION, *Circuit Judge.* Alonzo Perry was convicted in a Wisconsin state court as a "party to a crime" on several counts, including first degree intentional homicide, and was sentenced to life imprisonment. After pursuing direct appeals and post-conviction proceedings in the state court system, Perry filed a petition for habeas corpus relief in federal district court, arguing that the Wisconsin Court of Appeals had unreasonably applied federal law in violation of his Sixth Amendment right to effective assistance of counsel and his Fourteenth Amendment right to due process. The district court denied his petition, and Perry appeals. We affirm.

## I. Factual & Procedural Background

In the early morning hours of August 13, 1995, Harry Roberts was killed and two other men, Michael Moore and Walter Parker, were injured in an armed robbery and shooting incident outside of C.C. Havana's tavern in Milwaukee, Wisconsin. Three persons, Alonzo Perry, Joenathon Burnley and Leugene Hampton, were arrested and tried for their involvement in the crime. All three of the accused were clearly involved in the crime. There is some dispute as to the degree of involvement and who actually pulled the trigger during the assault.

At the trial of Alonzo Perry, the State presented testimony by the two wounded men, by a witness, Howard Thomas, and by police officers Walsh and July, who had arrived at the scene as the incident was occurring. Immediately following the incident, Parker told detectives that he had seen three men with masks come out of a field and then run back into it after the shooting. Thomas testified that he saw three men running from the scene. Moore testified that he was at the bar with Roberts and Parker that evening, that the three of them left the bar at closing and went to Roberts' car, and that Moore got into the passenger side while Roberts got into the driver's side. Moore explained that he then heard multiple gunshots coming from the sidewalk, saw the barrel of a gun sticking through the window and closed his eyes. He felt that he had been shot in the arm and heard the person with the gun say, "This is a jack." Moore testified that a second person with a gun was standing behind the person talking to him, and that the second person's gun was not pointed at the car. Moore further testified that the first person asked for money and reached into his front shirt pocket and took twenty dollars. He stated that the second person said, "This isn't enough money, shoot him

anyway." Moore testified that he told the first person he had more money in his shoe, and that the first person then removed his (Moore's) sock and the two men then left. Moore testified that the weapon the first man pointed at him looked like a nine millimeter weapon. Moore further testified that he had heard two guns going off in rapid sequence, that he wasn't sure if both guns were fired into Roberts' car, and that he did not know whether the shots from the second gun came from the second person standing outside his door or from somewhere else. All of the bullet casings found near the scene of the shooting, and all of the bullets found in Roberts' car and in the victims, came from a nine millimeter gun. A single .45 caliber bullet was lodged inside the radio of a car parked in front of Roberts' car. The evidence indicated that the bullet had entered that car through the rear window.

Perry and Hampton were apprehended and arrested close to the scene, and Burnley was apprehended and arrested later. When Perry was found, he was carrying a fully-loaded magazine for a .45 caliber handgun and he was missing a shoe. Police recovered his shoe in a nearby yard and they found a .45 caliber handgun near the shoe. The .45 handgun had the capacity to hold eight rounds, seven in the magazine and one in the chamber. When the gun was found, the magazine contained six rounds and there was one unfired cartridge in the chamber. The nine millimeter weapon itself was never found. The next morning, however, a nine millimeter magazine was found near the spot where Perry and Hampton had been apprehended.

In the days following his arrest, Perry made two separate statements to detectives which were also admitted at his trial. In the first statement, he asserted that Burnley was

the primary actor in the shooting, that Burnley had the nine millimeter weapon, that he had fired all the shots into the car and into the victims and that his brother, Hampton, who was present at the scene, was not involved in the incident. In his second statement, he stated that he and Burnley arrived at the bar around 1:45 a.m. and that Burnley had Hampton's nine millimeter handgun and was taking it to Hampton, who was already at the club. Perry also admitted that he was carrying his own .45 weapon. Perry further stated that, before going into the bar, Burnley left the nine millimeter under the seat of the car, as the tavern had a metal detector, but that Perry kept his gun with him since he knew he could not get into the bar since he was only nineteen. Perry explained that he waited outside for Burnley and Hampton and they came out around 2:08 a.m. He further stated that the three of them walked to Burnley's car and "got ready to rob anyone that was walking down the street with some gold on." They got into the car, and all put on masks or skull caps. Hampton then got the gun from underneath the seat. While watching for victims, Hampton pointed to three men walking toward a car parked behind them and stated "Man, let's get them. Let's get them." In recounting the shooting this time, however, Perry now stated that Hampton was the primary actor and that Hampton had the nine millimeter weapon and fired all of the shots into the car. He also stated that Burnley was involved as a searcher, but was unarmed. In both statements, Perry admitted that he was present, was armed with a .45 handgun, that he fired the gun once, into the air, but not toward any car or person and that he did not know that any actual shooting of persons was going to take place.

On August 17, 1994, Perry was charged with one count of first degree intentional homicide as a party to the

crime, under Wis. Stat. §§ 940.01(1) and 939.05; two counts of attempt to commit first degree intentional homicide as a party to the crime, under Wis. Stat. §§ 940.01(1), 939.32 and 939.05; and one count of armed robbery as a party to the crime, under Wis. Stat. §§ 943.32(1)(a) and 939.05. The State's theory at trial was that Perry agreed to participate in an armed robbery and was therefore guilty of each count as a "party to the crime," because under Wisconsin law a "party to a crime" is liable for the "natural and probable consequences" of a crime, here armed robbery. *See* Wis. Stat. §939.05(2)(c). Thus, the State argued that the intentional murder of Roberts and the attempted intentional murders of Moore and Parker were the natural and probable consequences of an armed robbery.

Perry's defense theory was that *intentional* murder was not the natural and probable consequence of armed robbery, and thus at most he was guilty as a "party to a crime" of felony murder, which in Wisconsin occurs where a person causes the death of another during the commission of a felony, *see* Wis. Stat. 940.03. To support this theory, Perry's counsel argued that Perry did not have the requisite intent to kill and had no advance knowledge that anyone would be shot during the robbery. Based on this theory, at the jury instruction conference, defense counsel requested the court to instruct the jury on felony murder, as well as on first and second degree reckless homicide. The State objected to the latter instructions but did not object to a felony murder instruction, and the court agreed to give the jury that instruction, although it refused to give instructions on first or second degree reckless homicide. It is at this point we encounter the pivotal issue in this appeal. In requesting the felony murder instruction, Perry's counsel did not specifically discuss the need for the "party to a crime" in-

struction to reference the felony murder instruction, and, as a result, the "party to a crime" instruction was only given with reference to the intentional homicide charge, and did not refer to the alternative, lesser included offense of felony murder.

The end result was that the trial court instructed the jury in the following manner: first, the instruction for the substantive offense of first degree intentional homicide and the lesser included offense of felony murder; second, the instruction for attempted first degree intentional homicide; third, the instruction for armed robbery; and last, the "party to a crime" instruction, specifically referencing the first degree intentional homicide charge.[1]

On February 3, 1995, the jury convicted Perry of first degree intentional homicide as a party to the crime, two counts of attempt to commit first degree intentional homicide as a party to the crime, and one count of armed robbery as a party to the crime. On March 25, 1995, the state court judge sentenced him to life imprisonment on Count One, with eligibility for parole to occur in not less than 45 years, to 20 years on Count Two, to be served consecutively, and 20 years on Count Three to be served concurrently. On Count IV, Perry was sentenced to 40 years to be served consecutively to the other counts, but that sentence was stayed. Additionally, Perry received 15 years of probation consecutive to Counts One, Two and Three.

Perry appealed his conviction in state court, raising issues which are not part of this appeal. On September 10, 1996, the Wisconsin Court of Appeals affirmed his con-

---

[1] The relevant parts of the jury instructions are attached as an appendix to the opinion.

victions. The Wisconsin Supreme Court denied his peti-
tion for review on November 20, 1996. Perry then filed
for post-conviction relief in Wisconsin state circuit court,
raising several post-conviction claims, including (1) wheth-
er his trial counsel was ineffective for failing to ensure
that a jury instruction on "party to a crime" liability refer-
enced the felony murder charge; and (2) whether the
Wisconsin jury instruction on the "natural and probable
consequences" theory of "party to a crime" liability im-
permissibly removed the burden from the State of proving
the defendant's intent to kill. As to his first argument,
Perry contended that, since the evidence was undis-
puted that he did not shoot Roberts, the jury could not
have found him guilty of felony murder according to
the jury instructions provided. The only choice left to the
jury, Perry argued, was to convict him of intentional homi-
cide as a "party to a crime." However, if the jury had
been given a "party to a crime" instruction in relation to
the felony murder instruction, Perry believes that the
jury might have convicted him on that lesser charge in-
stead. As to his second argument, Perry argued that an
intentional murder was not a "natural and probable con-
sequence" of armed robbery, and that the "party to a
crime" jury instruction incorporating that theory relieved
the State of its burden to prove his intent.

The state court denied all of Perry's claims, holding
that under *State v. Escalona-Naranjo*, 517 N.W.2d 157
(Wis. 1994), he could not raise constitutional issues for the
first time in post-conviction relief without demonstrat-
ing sufficient cause for not having raised the issues on
direct appeal. *Id.* at 164. Concluding that he had not dem-
onstrated such cause, the court held that he had proce-
durally defaulted those issues. Perry appealed, and the
Court of Appeals also denied his claims for relief. Perry
filed a timely petition for review to the Wisconsin Su-

preme Court, which denied his request on December 20, 1999.

Perry filed a petition for habeas relief under Section 2254(d) in federal district court, raising the same issues. The district court concluded that Perry had procedurally defaulted the claim that the "natural and probable consequences" jury instruction violated his right to due process, and therefore denied him habeas relief on that basis. Regarding Perry's ineffective assistance of counsel claim, the district court concluded that the State had waived its argument that Perry procedurally defaulted this claim by failing to address it in its brief, and therefore proceeded to address the merits. In doing so, the district court concluded that the Court of Appeals had not unreasonably applied *Strickland v. Washington* in denying Perry relief, and therefore denied his claim for habeas relief on this ground as well. The district court noted that it would have been preferable for the "party to a crime" instruction to specifically refer to felony murder by stating that Perry could be guilty of felony murder if he *or another* fired the fatal shot, but concluded that, "in the context of the entire trial, including the evidence presented, the arguments of both sides, and the totality of the jury instructions, . . . counsel's failure to request a more precisely tailored instruction [did not cause] prejudice to [Perry] as required by *Strickland*." Accordingly, the district court denied Perry habeas relief on all grounds.[2] Perry filed a motion for a certificate of appealability, which the district court granted. Perry now appeals.

---

[2] Perry had also argued that his trial counsel was ineffective for failing to object to allegedly prejudicial statements by the prosecutor during closing argument. That argument is not part of this appeal, and we need not address it.

## II. Analysis

### A. Applicable Standards

Perry argues that he is in custody in violation of the Sixth and Fourteenth Amendments to the United States Constitution. Specifically, he argues that he was denied ineffective assistance of counsel under the Sixth Amendment and *Strickland v. Washington*, 466 U.S. 668 (1984), because his trial counsel failed to ensure that a jury instruction on "party to a crime" liability was integrated with the jury instruction on the lesser included offense of felony murder. Further, he argues that he was denied due process under the Fourteenth Amendment, *Sandstrom v. Montana*, 442 U.S. 510 (1979) and *In re Winship*, 397 U.S. 358 (1972) because the trial court used a jury instruction on the "natural and probable consequences" theory of "party to a crime" liability, which he claims impermissibly shifted the burden of proof on intent to him.

In reviewing the district court's decision to deny habeas corpus relief, we review issues of law *de novo* and issues of fact for clear error. *See, e.g., Todd v. Schomig*, 283 F.3d 842, 848 (7th Cir. 2002). A defendant may only obtain habeas relief from a state court conviction where he establishes that the state court's adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. §§ 2254(d).

Under the "unreasonable application" clause of Section 2254(d)(1), "a federal habeas court may not issue the writ simply because that court concludes in its independent

judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, ___ U.S. ___, 120 S.Ct. 1495, 1522 (2000) (O'Connor, J. concurring, but writing for the court). Thus, we will "defer to a reasonable state court decision." *Anderson v. Cowan*, 227 F.3d 893, 897 (7th Cir. 2000).

Moreover, federal habeas relief is only available to a person in custody in violation of the United States Constitution or laws or treaties of the United States, *see* 28 U.S.C. §§ 2254(a), and is unavailable to remedy errors of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). A federal court will also not review a question of *federal* law decided by a state court if the decision of the state court rests on a state procedural ground that is independent of the federal question and adequate to support the judgment. *Stewart v. Smith*, ___ U.S. ___, 122 S.Ct. 2578, 2580-81 (2002); *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). Against this backdrop, we consider Perry's claims.

## B.   Alleged Constitutional Violations

### 1)   Sixth Amendment & *Strickland*

First, Perry argues that the Wisconsin Court of Appeals' determination that he was not deprived of effective assistance of counsel was unreasonable in light of *Strickland v. Washington*, 466 U.S. 668 (1984). The rule set forth in *Strickland* is "clearly established Federal law," *see* 28 U.S.C. §§ 2254(d)(1), and provides that Perry must establish that (1) his attorney's performance fell below an objective standard of reasonableness, and (2) the deficient performance caused him prejudice. 466 U.S. at 687. Specifically, Perry

argues that his trial counsel was ineffective for failing to ensure that the jury instruction on "party to a crime" liability included a reference to the lesser included offense of felony murder. As noted, the jury instruction on "party to a crime" liability was only integrated with the first degree intentional homicide charge, and not with any of the others, including felony murder. This omission, Perry contends, was fatal because his defense theory was that, at most, he was guilty of felony murder, as a party to the crime, not of first degree intentional homicide. However, since the "party to a crime" instruction did not reference the lesser included offense of felony murder, Perry argues that his theory was wasted on the jury because, by not being properly instructed, it was unable to find him guilty of the lesser offense, even though they may not have been convinced beyond a reasonable doubt that he was guilty of first degree intentional homicide.

The Wisconsin Court of Appeals recited the appropriate *Strickland* test and, in concluding that Perry's counsel had not been ineffective, reasoned that the jury instructions *in their entirety* properly set forth the law on "party to a crime" liability. Perry, however, argues that this is unreasonable because the mere fact that the "party to a crime" liability instructions were given for the first degree intentional murder charge cannot cure the defect with respect to the felony murder charge. Because we have concerns about the propriety of these instructions (at a minimum, they were not clearly drafted), we will assume for purposes of this decision that Perry's counsel was deficient in failing to object to them. However, that does not end the inquiry. Rather, we must also determine whether the Court of Appeals was unreasonable in concluding that the jury could have independently determined that Perry was guilty of first degree inten-

tional homicide, and therefore that Perry was not prejudiced by the instructions.

Initially, Perry argues that the Court of Appeals, by considering whether the jury could have independently determined that Perry was guilty of first degree intentional homicide, improperly applied a "sufficiency of the evidence" standard, as opposed to the *Strickland* standard. We disagree. Under *Strickland*'s prejudice prong, Perry must establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. By considering whether the jury could have independently reached the verdict it did, the Court of Appeals was merely reaching the conclusion that any error by Perry's counsel was not prejudicial. Therefore, it applied the proper standard. We now consider whether its application was unreasonable.

As noted above, under *Strickland*, to establish prejudice, Perry must prove there is a reasonable probability that, but for the counsel's failure to object to the improper instruction, the result of the proceeding would have been different. Perry argues that there is a reasonable probability that the jury believed it could not impose felony murder because of the improper instruction, but not wanting to let him completely off the hook, found him guilty of first degree intentional homicide. Given the instructions in their entirety, the testimony presented to the jury, the arguments of both the State and Perry's counsel and the overwhelming evidence of Perry's guilt, we conclude that it is not reasonable to conclude that the instruction led the jury to believe that it could convict Perry of felony murder *only if* he directly caused the death of the victim. *See Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973) (courts must review instructions in the "context of the

overall charge" which includes "testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge"). The charges, the attorneys' arguments, Perry's own statements offered into evidence and the jury instructions as a whole all spoke in terms of Perry's culpability on each count as a party to the crime. Thus, it was absolutely clear at trial that Perry was being charged, on all counts, as a party to the crime.[3] Furthermore, the jury was specifically instructed not to reach the felony murder charge if it found Perry guilty of first degree intentional homicide. We presume that juries follow instructions. *See United States v. Miller*, 276 F.3d 370, 375 (7th Cir. 2002). Thus, even assuming that the party to a crime instruction should have referenced the felony murder instruction, once the jury concluded that Perry was guilty of first degree intentional homicide, as a party to the crime, the jury never needed to reach the felony murder instruction. Under these circumstances, there is no reasonable probability that, but for counsel's error in failing to object to the jury instruction, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694 (a "reasonable probability" is a "probability sufficient to undermine confidence in the outcome"). For these reasons, we conclude that the Court of Appeals reasonably concluded that Perry did not suffer prejudice because of the jury instructions.

---

[3] We note that the jury also found Perry guilty of two counts of attempt to commit intentional homicide even though there were no "party to a crime" liability instructions given with respect to those charges. However, interestingly, Perry has never challenged his trial counsel's failure to object to incorporating "party to a crime" instructions with the substantive charges of attempt to commit intentional homicide.

### 2.  Due Process Rights

Next, Perry argues that the Wisconsin Court of Appeals erred because the trial court's use of Wisconsin's pattern jury instruction on the "natural and probable consequences" theory of "party to a crime" liability impermissibly shifted the burden of proof to him in violation of his Fourteenth Amendment due process rights as set forth in *Sandstrom v. Montana*, 442 U.S. 510 (1979), and *In re Winship*, 397 U.S. 358 (1972).

As previously noted, we may not review a federal claim, such as Perry's due process claim, if the state court rests its decision on a state procedural ground that is independent of the federal question and adequate to support the judgment. *Stewart*, 122 S.Ct. at 2581. Wisconsin has a procedural rule that bars a criminal defendant from raising, in a postconviction motion, a constitutional issue that could have been, but was not, raised on direct appeal from his conviction, unless the defendant can offer a sufficient reason for not asserting the issue on his direct appeal. *See Escalona-Naranjo*, 517 N.W.2d at 184-85. Although this court has recognized the *Escalona-Naranjo* rule as an adequate state ground, that question is not at issue here. *See Liegakos v. Cooke*, 106 F.3d 1381 (7th Cir. 1997). Perry's argument is that the Court of Appeals' reliance on this ground was not independent of the federal question.

In support of this position, Perry cites *Harris v. Reed*, 489 U.S. 255 (1989), wherein the Supreme Court held that the "adequate and independent state ground" doctrine does not bar habeas review of the federal claim unless the state court *actually relied* on the procedural default as an independent basis for its decision. 489 U.S. at 261-62. To be an independent basis for the state court's ruling, "the state court therefore must have 'clearly and expressly' relied on procedural default as the basis of its ruling." *Braun*

*v. Powell*, 227 F.3d 908, 912 (7th Cir. 2000). Perry claims that the state Court of Appeals did not clearly and expressly deny his due process claim on procedural default grounds, and therefore that basis cannot serve as an independent and adequate state ground.

To understand his argument a little additional detail is necessary. It is undisputed that Perry failed to raise his due process claim on direct appeal; the first time he raised it was in his motion for post-conviction relief in Wisconsin state court. As previously noted, on Perry's petition for post-conviction relief, the Wisconsin state court denied all of Perry's claims, holding that he had procedurally defaulted them under the *Escalona-Naranjo* rule and that he had not demonstrated sufficient reason for his failure to raise the issues on direct appeal. Nevertheless, the state court went on to consider the merits of Perry's Sixth Amendment claim, reviewed the record, and concluded that the claim lacked merit and that his counsel's performance was not deficient or prejudicial. The state court did not reach the merits of Perry's due process claim. Perry appealed, and the Court of Appeals also denied his claims for relief. The Court of Appeals agreed with the state court that Perry had procedurally defaulted his claims and that Perry offered only conclusory allegations for his failure to raise the issues on direct appeal. Reciting the Supreme Court's test in *Strickland v. Washington*, 466 U.S. 668 (1984), the Court of Appeals further held that Perry's trial counsel was not ineffective because the jury instructions, in their entirety, properly set forth the law on "party to a crime" liability as it relates to felony murder. Next, the Court of Appeals concluded that, based on the evidence presented at trial, the jury could have independently determined that Perry committed first degree intentional homicide as a party to a crime, and therefore Perry had not been prejudiced. While af-

firming the trial court's order in its entirety, the Court of
Appeals did not specifically address Perry's argument
regarding a violation of his due process rights. In its
analysis, the district court reasoned that the Court of
Appeals had merely overlooked the due process claim,
and thus concluded that it was clear that Perry had pro-
cedurally defaulted the argument. Perry argues, however,
that the Court of Appeals did not actually rely, through
a clear and express statement, on the *Escalona-Naranjo*
procedural rule and that its silence on the due process
claim indicates that it did not rest its decision on an "in-
dependent and adequate" state procedural ground.

However, a close review of the Court of Appeals' deci-
sion reveals that it did clearly and expressly rest its deci-
sion regarding Perry's due process claim on procedural
default. After restating all of Perry's arguments, includ-
ing his due process argument, the Court of Appeals stated
that the "circuit court denied [Perry's postconviction]
motion without a hearing, finding that the claims were
barred by *Escalona-Naranjo*, and that the allegations in the
motion did not state a sufficient reason to overcome that
bar." The court then recited the *Escalona-Naranjo* standard
and concluded "[w]e agree with the State that since Perry
has already had a direct appeal in this case, in order to
succeed here, he must show that postconviction counsel
was ineffective for failing to challenge the effectiveness
of trial counsel in either a postconviction motion on or di-
rect appeal." The Court of Appeals then addressed the
merits of Perry's ineffective assistance of counsel claim,
and in concluding that trial counsel did not err in failing
to object to the jury instructions, necessarily concluded
that Perry had not established that his postconviction coun-
sel was ineffective for failing to challenge the trial counsel's
conduct. The Court of Appeals then held that, under the
*Escalona-Naranjo* rule, Perry had not established "suffi-

cient reason" for his procedural default. Thus, while the Court of Appeals did not address *Escalona-Naranjo*'s impact with specific reference to Perry's due process argument, it is still clear from its decision that the court considered the argument to have been procedurally defaulted. Therefore, while it is possible that the Wisconsin Court of Appeals could have been more precise, we find that its statements, when considered in context, are sufficiently plain to constitute reliance on the independent and adequate state law ground of procedural default.

## III. Conclusion

For the reasons stated herein, we conclude that Perry did not establish that the Wisconsin Court of Appeals unreasonably applied the *Strickland v. Washington* test in determining that Perry's Sixth Amendment right to counsel had not been violated, and that Perry's argument that the jury instructions violated his due process rights under the Fourteenth Amendment is barred by an independent and adequate state ground, procedural default. Therefore, we affirm the decision of the district court to deny Perry's petition for habeas corpus relief under 28 U.S.C. § 2254.

## Appendix

The jury instructions provided, in relevant part:

> The defendant in this case is charged with first degree intentional homicide. You must first consider whether the defendant is guilty of that offense. If you are not satisfied that the defendant is guilty of first degree intentional homicide, you must consider whether or not the defendant is guilty of felony murder, which is a less serious degree of criminal homicide.
>
>                    * * *
>
> Intentional homicide and felony murder require that the defendant caused the death of the victim. First degree intentional homicide requires the State to prove the additional fact that the defendant acted with the intent to kill. Felony murder requires the State to prove that the defendant caused the death of Harry Roberts while committing or attempting to commit the crime of armed robbery.
>
>> The elements necessary to constitute each crime will now be defined for you in greater detail.

[The court then gave the jury substantive instructions on first degree intentional homicide, felony murder and attempt to commit first degree intentional homicide. Each instruction was phrased in terms of the defendant's actions or intent.]

                    * * *

[The court then proceeded to give the "party to a crime" instruction, as follows:]

> The criminal code of Wisconsin provides that whoever is concerned in the commission of a crime may be charged with and convicted of the commission of a crime although he did not directly commit it.

The State contends that the defendant was concerned in the commission of the crime of armed robbery as a member of [a] conspiracy or as an aider and abetter.

* * *

Before you may find the defendant guilty, you must be satisfied beyond a reasonable doubt that the defendant was a member of a conspiracy or aided and abetted to commit the crime of armed robbery, that first degree intentional homicide was committed in pursuance of armed robbery, and that under the circumstances, first degree intentional homicide was a natural and probable consequence of armed robbery.

First, consider whether the defendant was a member of a conspiracy or aided and abetted to commit the crime of armed robbery. . . .

Next consider whether the crime of first degree intentional homicide was committed.

First degree intentional homicide, as defined in the Criminal Code of Wisconsin, is committed by one who causes the death of another human being with intent to kill that person or another. The State must prove by evidence which satisfies you beyond a reasonable doubt that the following two elements were present.

First, that the defendant *or someone he was working with* caused the death of Harry Roberts.

Second, that the defendant *or someone he was working with* intended to kill Harry Roberts.

Mere presence at the scene of the crime and knowledge that a crime is being committed are not sufficient to establish that the defendant aided and abetted the crime, unless you find a reasonable doubt that the

defendant was a participant and not merely a knowing spectator.

* * *

If you are satisfied beyond a reasonable doubt that the defendant is a member of a conspiracy or aided and abetted the commission of armed robbery, that the crime of first degree intentional homicide was committed, and that under the circumstances first degree intentional homicide was a natural and probable consequence of armed robbery, you should find the defendant guilty.

(Emphasis added.)

POSNER, *Circuit Judge*, dissenting. Perry's lawyer committed a fearful mistake at the trial, though not because he told the jury in his closing argument that they should convict his client of felony murder, which is second degree in Wisconsin, rather than of first-degree murder. He said this because the felony-murder charge was pat and because if convicted only of felony murder and armed robbery Perry would have been eligible for parole after 10 years, while if convicted of first-degree murder, as he was, he would be sentenced to life in prison without possibility of parole; and so he was. But, fatally, his lawyer failed to object to an instruction that, if taken seriously—and we have no reason to doubt that it was—precluded the jury from convicting Perry of felony murder and, in the circumstances, foredoomed him to be convicted of first-degree murder. For the felony-murder instruction required the jury to find, in order to convict Perry of felony murder, that he had caused the murder victim's death. The evidence was uncontradicted that the victim was killed by another of the robbers, not Perry. The entire point of felony murder is that the felon who did not "cause" a death, in the ordinary meaning of the word, nevertheless is guilty of (a form of) murder. Perry was charged with and convicted of first-degree murder under Wisconsin's "party to a crime" statute, which makes an aider and abettor or a conspirator liable not only for the crimes that he agreed to assist with or participate in but also for any other crime that was the "natural and probable" consequence of the crime that he aided an accomplice to commit or that he conspired to commit. Wis. Stat. § 939.05(2)(c). The party-to-a-crime and felony-murder instructions should have been integrated in the sense of being presented to the jury with a clear indication of the difference between the two crimes: the difference is not, as the instruction stated, that only felony

murder requires proof that the defendant "caused" the death of the victim. The causation requirements of the two statutes are in fact the same. The difference is that the party-to-a-crime statute requires that the death have been a "natural and probable" consequence of the crime that the defendant conspired to commit or aided and abetted the commission of.

It is highly probable that the jury was confused by the wording of Wisconsin's felony-murder statute, the gist of which was repeated in the instructions: "Whoever *causes* the death of another human being while committing or attempting to commit a crime specified in [various statutes, including the statute criminalizing armed robbery] may be imprisoned for not more than 20 years in excess of the maximum period of imprisonment provided by law for that crime or attempt." Wis. Stat. § 940.03 (emphasis added). A layperson would not without instruction understand that "causes" in the statute and instructions is a technical term, meaning only that the defendant's conduct "was a substantial factor in bringing about the death," so that, for example, a defendant can be found guilty of felony murder even if the victim of the felony fired the fatal shot, e.g., *State v. Oimen*, 516 N.W.2d 399, 404 (Wis. 1994); see also *State v. Rivera*, 516 N.W.2d 391, 392 (Wis. 1994), because, had it not been for the felony, the occasion for the victim to defend himself would not have arisen. This should have been but was not explained to the jury. The jury was left to assume that "causes" was being used in its ordinary sense, the sense in which Perry—who neither intended the victim's death nor did anything to bring it about—did not cause it.

Buried deep in the instructions was the statement that "before the relation of cause and effect can be found to exist, it must appear that the defendant's act was a sub-

stantial factor in producing the death." But "substantial factor" was not explained; and, anyway, so deep was the burial that neither the lawyers nor the judges involved in this case have ever suggested that its inclusion would have disabused the jury of the misconception that to find Perry guilty of felony murder they would have had to find that he pulled the trigger.

The decision by the Wisconsin court of appeals affirming Perry's conviction discussed the adequacy of the instructions in only the most perfunctory manner. The district judge did a little better, saying that the fact that the defense lawyer argued in his closing argument without objection that his client should be found guilty only of felony murder, coupled with the fact that the judge did instruct the jury on felony murder, showed that the jury must have realized that it could acquit Perry of the party-to-a-crime charge and convict him of felony murder. But then the district judge contradicted himself, for after noting that the trial judge had instructed the jury not to consider the felony-murder charge unless it could not unanimously agree that Perry was guilty of the more serious charge, he said that "there is a strong presumption that juries follow the instructions they are given." Had the jury followed the instructions as they could be expected to be understood by laypersons, and so as they undoubtedly were understood by the members of the jury, it would not have thought itself free to convict Perry of felony murder, because he was not the triggerman.

We should be realistic about the jurors. They knew from the closing arguments that Perry's lawyer wanted them to convict Perry of felony murder. And it is entirely possible that in their initial discussion of the party-to-a-crime charge they were not unanimously of the opinion that he was guilty of it. But when they then in accordance with

the judge's instruction on the sequence of their consideration turned to the felony-murder charge and read the instructions, they would have thought they could not convict him of felony murder because he had not been the "cause" of the victim's death as they would have understood "cause" to mean in the absence of explanation. At that point their choice would have been between acquitting Perry of all murder charges or convicting him of party-to-a-crime first-degree murder, and faced with that choice any initial doubters may well have swung around to agreeing to convict him of that charge after all.

Had Perry's lawyer not told the jury that they should convict his client of felony murder, it would be arguable that his failure to object to the felony-murder instruction was tactical—that he was going for broke, hoping that the jury, if forced to choose between convicting Perry of first-degree murder and of armed robbery, would convict him only of the latter. That is not always a reasonable strategy. "The spectrum of counsel's legitimate tactical choices does not include abandoning a client's only defense in the hope that a jury's sympathy will cause them to misapply or ignore the law they have sworn to follow. By failing to tender instructions that would allow the jury to consider Barnard's justification and denying them the option of finding him guilty of a lesser offense, trial counsel defaulted in his obligation to Barnard." *United States ex rel. Barnard v. Lane*, 819 F.2d 798, 805 (7th Cir. 1987). But it might have been reasonable here. Perry didn't pull the trigger, or agree that anyone would be shot, and so he was guilty of first-degree murder, we recall, only if the jury found that the killing was the "natural and probable" consequence of the armed robbery. Wis. Stat. § 939.05(2)(c); *State v. Glenn*, 545 N.W.2d 230, 235-36 (Wis. 1996); *State v. Ivy*, 350 N.W.2d 622, 626 (Wis. 1984) ("proof of intent is not required for conviction of the differ-

ent offense if the offense was the natural and probable consequence of the intended crime to which the defendant was a party"); *Piaskowski v. Bett*, 256 F.3d 687, 694 (7th Cir. 2001) ("under Wisconsin law, a conspirator is responsible for any crime committed as a natural and probable consequence of the intended crime"). The jury might not have found that the murder was a natural and probable consequence of the armed robbery, and then it would have had to acquit Perry if it also though erroneously believed that he could not be guilty of felony murder because he had not "caused" the victim's death. But the lawyer did not adopt the go-for-broke strategy. He must have believed that the jury wanted to assign *some* responsibility to Perry for the death. That must have been why he told the jury to convict Perry of felony murder—but in doing this without objecting to the instruction he was telling them to do the impossible.

The lawyer's mistake in failing to object to an instruction that nullified the lesser-included instruction that he himself thought might spare his client the maximum sentence possible in Wisconsin (a state that does not have capital punishment) was gross, palpable, and, once the alternative characterization as a tactic is rejected, as it must be—for all the lawyer did was shoot his client in the foot—brought his representation of his client below the minimum standard of competence required of a criminal defendant's lawyer. There is no argument that he redeemed himself by above-average advocacy in some other part of the trial.

That leaves only the question whether the mistake was prejudicial to Perry in the sense that it may well have changed the outcome of the trial. The answer is yes. A jury given a choice between finding Perry guilty of first-degree murder and finding him guilty of felony murder

might well have chosen the latter course. Indeed, that possibility is inherent in the judge's decision to instruct the jury on felony murder, since a defendant is not entitled to an instruction for which there is no support in the evidence.

The judge might have been mistaken, however; and if only a lawless jury would have acquitted Perry of first-degree murder the mistake in the instruction on felony-murder was not prejudicial in the relevant sense. *Strickland v. Washington*, 466 U.S. 668, 694-95 (1984); *Jones v. Jones*, 163 F.3d 285, 306-07 (5th Cir. 1998); *Flamer v. Delaware*, 68 F.3d 710, 728 (3d Cir. 1995). But a finding that the death of the victim was a natural and probable consequence of the armed robbery, the finding required to condemn Perry of first-degree murder, while likely, see *State v. Balistreri*, 317 N.W.2d 493, 501-03 (Wis. 1982); *State v. Asfoor*, 249 N.W.2d 529, 537-38 (Wis. 1977); *State v. Cydzik*, 211 N.W.2d 421, 429-30 (Wis. 1973), was not inevitable. It was for the jury to decide what is "natural and probable." *State v. Ivy*, *supra*, 350 N.W.2d at 628. Only .26 of 1 percent of all robberies result in a death (*Enmund v. Florida*, 458 U.S. 782, 799-800 and nn. 23-24 (1982), says .43 of 1 percent, but was based on the 1980 Uniform Crime Reports, and my figure is based on the 2000 UCR), and since 60.6 percent of all robberies are armed robberies (same source), even if *all* deaths in robberies occur in armed robberies only .42 of 1 percent of such robberies (that is, 4 out of every 1,000) result in the victim's death. The percentage would rise to .63 (6 per thousand) if all victim deaths occurred in armed robberies *in which a gun was used*, which are 40.9 percent of all robberies. But clearly that would be an exaggeration, since armed robberies are defined as robberies committed with a dangerous weapon. Whether .525 of 1 percent (the result of averaging .42 percent and .63 percent)—

5 in 1,000—is high enough to make death a natural and probable consequence of armed robbery is a question on which different juries might give different answers without being thought lawless. "In order to determine whether the death was a natural and probable consequence of the robbery and whether it occurred during the robbery, it was necessary to hear evidence concerning the circumstances of the robbery." *Briggs v. State*, 251 N.W.2d 12, 20 (Wis. 1977); cf. *State v. Pierson*, 530 N.W.2d 784, 789-90 and n. 3 (Minn. 1995).

One finds intimations in Wisconsin cases, and in cases in our court interpreting the party-to-a-crime statute, that the victim's death is a natural and probable consequence of armed robbery as a matter of law. *State v. Oimen*, *supra*, 516 N.W.2d at 406-07; *Wilson v. State*, 208 N.W.2d 134, 143 (Wis. 1973); *Solles v. Israel*, 868 F.2d 242, 251 (7th Cir. 1989); *Feela v. Israel*, 727 F.2d 151, 158 (7th Cir. 1984). But in *Wilson* the defendant was the triggerman and in *Solles* the triggerman had said to the defendant "Should I shoot him?" and the defendant had responded, "Only if you have to." 868 F.2d at 244. *Oimen* explains that the "natural and probable" formula was adopted as a substitute for limiting felony murder to felonies that are "inherently dangerous" (see also *State v. Noren*, 371 N.W.2d 381, 383-84 (Wis. App. 1985)), of which armed robbery is one. But the court was just explaining why the Wisconsin legislature had dropped from the felony-murder statute the "natural and probable" formula in favor of an enumeration of specific felonies, such as armed robbery, to which the statute would henceforth be limited. The court was not considering the party-to-a-crime statute. Only *Feela* among the cases that might be cited against Perry's appeal is really on point, for it was a case much like this and we held that the failure to give a "natural and probable" instruction was harmless error. But *Feela* did not cite *Briggs*, which

stands as the governing statement of Wisconsin law. Instead it cited cases such as *Balistreri* and *Asfoor* which hold merely that a jury is permitted—not required—to infer that the murder of a robbery victim is a natural and probable consequence of an armed robbery.

A properly instructed jury might have so found here. But as Perry had no foreknowledge that the robbery victim would be killed, and did not contribute to the death in any very obvious sense, the jury, consistent with Wisconsin law as stated in *Briggs*, might have acquitted him had it been given a real alternative of convicting him of felony murder. Perry's was in fact a classic case of felony murder. The murder occurred in the course of his felony but he did not intend or perpetrate the murder. See *State v. Rivera, supra*; *State v. Chambers*, 515 N.W.2d 531, 534 and n. 4 (Wis. App. 1994); *State v. Back*, 341 N.W.2d 273, 276-77 (Minn. 1983); *State v. Utley*, 928 S.W.2d 448, 451-52 (Tenn. Crim. App. 1995); *Commonwealth v. DeVaughn*, 292 A.2d 444, 447 (Pa. App. 1972). Felony murder and party-to-a-crime liability overlap and jurors familiar with the term "felony murder" from television or newspapers may have thought that Wisconsin law defines it very narrowly and that what *they* thought was felony murder was intended to be covered by the mysterious reference to "natural and probable" consequences in the party-to-a-crime statute. The first-degree murder instruction invited such a misunderstanding because it allowed the jury to convict Perry if he "or someone else" intended the death—while the instruction on felony murder contained no such allowance.

We must in evaluating a state prisoner's application for federal habeas corpus defer to the state courts' judgment *if reasonable*. 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 411 (2000); *Dixon v. Snyder*, 266 F.3d 693,

700 (7th Cir. 2001). The judgment that Perry received effective assistance of counsel was not reasonable, and so Perry is entitled to a new trial.

A true Copy:

        Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*