Corey A. STEWART, Petitioner–
Appellant,

v.

Matthew J. FRANK, Defendant–
Appellee.

No. 02–4255.

United States Court of Appeals,
Seventh Circuit.

Argued June 11, 2003.

Decided June 20, 2003.

Before POSNER, COFFEY, and RIPPLE, Circuit Judges.

ORDER

In July 1998, a jury in Wisconsin state court found Corey A. Stewart guilty of delivering less than five grams of cocaine as a repeat offender. After exhausting his state remedies, Mr. Stewart filed a petition for a writ of habeas corpus in federal district court. 28 U.S.C. § 2254. The district court denied Mr. Stewart's petition but granted a certificate of appealability on one question: whether Mr. Stewart's trial counsel rendered ineffective assistance of counsel by not submitting evidence at trial showing that Mr. Stewart had a mustache and goatee on the day of his arrest. We affirm.

The primary witness at Mr. Stewart's trial was Milwaukee Police Detective Marilyn Francis, who testified to the following events. On May 5, 1998, she went undercover to a duplex apartment building at

2217 North 36th Street to attempt to purchase crack. The police department had received a number of complaints that drugs were being sold from the two units in the building, but primarily from the second-floor unit. Detective Francis proceeded up the front porch of the building and rang the doorbell for the second-floor unit. When she did so, however, someone in the first-floor unit answered and asked her what she wanted. She indicated that she wanted to purchase two rocks of crack; this person told her to go around to the back of the building. She described the person in the first-floor unit as a black male with a dark complexion and wearing a tan shirt and tan pants.

Before Detective Francis left the porch, a second male called down from the second-floor unit and asked what she wanted. She did not see him. She again indicated that she wanted to purchase crack, and he directed her to the side of the building. When she arrived at the side of the building, a black male appeared at a second-floor window. He lowered a sock on a string and told her to put twenty dollars in the sock. She did; he raised the sock and said he would be right back. Detective Francis saw his face, head, and part of his torso while he was leaning out of the window. It was 5:00 p.m. and sunny. He was approximately ten to fifteen feet from her. She said she got a "very good look" at him. R.6:27 at 39. He returned approximately 30 seconds later and dropped down a piece of newspaper with two rocks of crack inside.

Detective Francis then left with the crack and radioed to her partner, who was "covering her," and an "arrest team" in the area. R.6:27 at 42,49. She described the dealer as a black male in his twenties with medium complexion; curly, "permed-style" hair like a "Jheri curl" or "processed" hair; eyes "lighter than most eyes of African–American people"; and wearing a black t-shirt. R.6:27 at 41. When officers arrived minutes later at the apartment building, they found only two people in the second-floor unit: Mr. Stewart, who matched the description given by Detective Francis, and a woman named Davona Grimes. The twenty-dollar bill Detective Francis used to purchase the crack was in Ms. Grimes' purse. Detective Francis then returned to the apartment building and identified Mr. Stewart as the person who sold her the crack. She estimated that approximately fifteen minutes elapsed from when she purchased the crack to when she identified Mr. Stewart.

Mr. Stewart did not testify and did not present any witnesses on his behalf; rather, his trial strategy was to question the accuracy of Detective Francis' identification. During her opening statement, Mr. Stewart's counsel stated that Mr. Stewart had a mustache and goatee "like he does today" on the day of his arrest, and that Detective Francis failed to mention a mustache or goatee when she described the seller by radio. R.6:27 at 13. In cross-examining Detective Francis, Mr. Stewart's counsel asked her whether she reported after the drug buy that the seller had a mustache or goatee, and she responded that she had not. During closing argument, Mr. Stewart's counsel asserted that Mr. Stewart had a mustache and goatee when he was arrested, and Detective Francis had not described the seller as having either. The prosecutor objected on the ground that there was no evidence submitted on whether Mr. Stewart had a mustache or goatee on the day of his arrest. The judge instructed the jury to rely on their recollections of the trial evidence. Finally, during deliberations the jury sent a note to the judge stating, "Need to see transcript regarding defense cross examining Officer Francis concerning Corey Stewart having a goatee and mustache!

We need verification!" R.1, Ex.A at 14. After reviewing the trial transcript and consulting with the attorneys, the judge sent a note to the jury stating that there was no evidence in the record on whether Mr. Stewart had a mustache or goatee on the day of his arrest.

Following his conviction, Mr. Stewart filed a motion for a new trial, arguing that his trial counsel rendered ineffective assistance by not submitting evidence showing he had a mustache and goatee on the day of his arrest. To support this argument, Mr. Stewart submitted a booking photo taken on the day of his arrest and showing him with a mustache and goatee. The trial court, based on the photo, characterized Mr. Stewart's facial hair: "[t]he mustache is very thin and barely noticeable, and the cheek and chin hairs are scanty." Order at 4. The court applied *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and concluded that, even though the jury inquired about facial hair, "there is not a reasonable probability that such evidence would have altered the outcome." *Id.* at 5. The court focused on Detective Francis' positive identification of Mr. Stewart at the scene and in court—characterizing her testimony as "extremely credible" and "extremely compelling"—as well as on the facts that the response to her description was immediate and that Mr. Stewart was the only male found in the second-floor unit. *Id.* at 5–6.

The Wisconsin appellate court, also applying *Strickland,* agreed with the trial court that based on the circumstances and the strength of Detective Francis' identification there is no reasonable probability that evidence of facial hair would have affected the outcome. The Wisconsin Supreme Court denied Mr. Stewart's petition for review. The district court denied Mr. Stewart's habeas corpus petition after concluding that the state courts' decisions were not contrary to or unreasonable applications of *Strickland.*

On appeal, Mr. Stewart argues that he was denied effective assistance of counsel and that the Wisconsin-court decisions were "unreasonable applications" of *Strickland.* See 28 U.S.C. § 2254(d)(1). Under *Strickland,* Stewart must show both (1) his trial counsel's performance was objectively unreasonable, and (2) but for counsel's performance there was a reasonable probability of a different result at trial. *Strickland,* 466 U.S. at 687, 694, 104 S.Ct. 2052; *Roche v. Davis,* 291 F.3d 473, 481–82 (7th Cir.2002). We defer to the Wisconsin courts' application of *Strickland,* and will uphold the conclusions, even if we conclude they are incorrect, so long as they are reasonable. *Roche,* 291 F.3d at 481; *Perry v. McCaughtry,* 308 F.3d 682, 689 (7th Cir.2002); *see also Holman v. Gilmore,* 126 F.3d 876, 882 (7th Cir. 1997).

█ As a preliminary matter, we note that it was not unreasonable for the Wisconsin courts to skip the performance component and to focus solely on the prejudice component. *See Strickland,* 466 U.S. at 697, 104 S.Ct. 2052 (courts may dispose of ineffective-assistance claims based on prejudice factor without considering performance factor).

█ On the prejudice component, Mr. Stewart contends that the Wisconsin courts acted unreasonably—in concluding that there is no reasonable probability that the facial-hair evidence would have affected the outcome—because the evidence weakened Detective Francis' identification and the jury inquired about facial hair. This argument depends on the speculation that Mr. Stewart's facial hair was such a distinguishing characteristic that someone describing him would mention it. This may be correct, and a reasonable jury may

have believed so, but the Wisconsin courts did not act unreasonably in rejecting it.

In doing so, the courts focused on the strength of Detective Francis' identification. First, the trial court determined that her testimony was "extremely credible" and "extremely compelling." *See Crivens v. Roth,* 172 F.3d 991, 995 (7th Cir.1999) (deference to state court's credibility determinations). Second, the circumstances of the description and identification favored their accuracy: Detective Francis gave detailed information about the dealer's complexion, hair, eyes, age, and clothing immediately after observing him during daylight from ten to fifteen feet away; police arrived within minutes and found Mr. Stewart, who matched the description and was the only male in the apartment; the other woman found in the apartment with him had the drug-buy money in her purse; and Detective Francis then returned to the scene and identified Mr. Stewart as the dealer. Finally, the facial-hair evidence did not contradict Detective Francis' description or trial testimony; it would only have weakened the description if one observing Stewart would be likely to mention his facial hair. Given the conclusions about Detective Francis' description, identification, and testimony, the Wisconsin courts reasonably concluded that the failure of counsel to establish that Mr. Stewart had facial hair on the date of the crime did not undermine confidence in the outcome of the case.

AFFIRMED